HOLDEMAN, EXR., APPELLEE, *v.* EPPERSON ET AL., APPELLANTS.

[Cite as *Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209.]

(No. 2005–1642—Submitted June 6, 2006—Decided December 13, 2006.)

LANZINGER, J.

{¶ 1} In this case, accepted on a discretionary appeal, we are asked to determine what rights an executor of the estate of a deceased member of a limited liability company is entitled to exercise. Louise Epperson and Daniel Holdeman formed Holdeman–Eros, L.L.C., a limited liability company, by filing articles of organization with the Ohio Secretary of State on May 3, 2002. They also executed an operating agreement that set forth their respective ownership interests and management authority for the business. Pursuant to the agreement, Daniel Holdeman was a member and director and held a 51 percent interest in the company and Louise Epperson, the other member and director, held a 49 percent interest in the company.

{¶ 2} Shortly after the company was formed, Holdeman died, and his widow, Jo Ann Holdeman, was appointed executor of his estate. As the executor, pursuant to Section 12 of the operating agreement, Mrs. Holdeman became Holdeman's successor-in-interest. Under the agreement's terms, a successor-in-interest shall be admitted as a member only upon the written consent of the company. When Mrs. Holdeman asked for consent to become a member, Epperson refused.

{¶ 3} Mrs. Holdeman then filed a declaratory-judgment action against Epperson and the company, requesting a declaration that she should be given all the rights of a member during the estate's administration. Epperson and the company counterclaimed, seeking a declaration that because Holdeman ceased to be a member of the company when he died, Mrs. Holdeman, though the assignee of his membership interest, was not a member.

{¶ 4} The Clark County Court of Common Pleas awarded a declaratory judgment to Mrs. Holdeman, holding that she, as executor of her husband's estate and successor-in-interest, should be accorded all rights as a member of the company, including, but not limited to, the full rights of profits and distributions, full access to all business records, and full rights of operation and control of the

company "with due regard for and with the purpose of timely administering the estate."

{¶ 5} The Second District Court of Appeals affirmed the judgment of the trial court, stating that as R.C. 1705.21(A) conflicts with the operating agreement's provisions dealing with the death of a member, the statute takes precedence. In concluding that "Mrs. Holdeman is entitled to exercise all the member rights that Daniel Holdeman possessed before his death," the court of appeals stressed that Mrs. Holdeman could exercise her member rights only during the period of administration of the estate, for purposes of settling the estate. *Holdeman v. Epperson,* Clark App. No. 2004–CA–49, 2005-Ohio-3750, 2005 WL 1714210, ¶ 54.

{¶ 6} The proposition as framed by the appellants is whether "[t]he legal representative of a withdrawing member of a limited liability company has the legal rights of an assignee and not a member." Restated, the principal issue in this case is the extent to which an executor of an estate of a deceased member may exercise "member" rights in a limited liability company.

{¶ 7} The appellants, Epperson and the company, argue that Mrs. Holdeman, as a successor-in-interest and executor, has only the legal rights as an assignee of the economic interest of the member in the company, rather than the full rights of a member. They contend that the operating agreement does not conflict with the statute and thus the operating agreement controls the outcome. Appellee, Mrs. Holdeman, asserts that R.C. 1705.21(A) conflicts with and therefore over-rides the provisions of the operating agreement. Both the statute and operating agreement must be examined.

### The Operating Agreement

{¶ 8} The operating agreement of the company states that the company is a "member-managed limited liability company. All of the authority of the Company shall be exercised by or under the Company's Board of Directors, which shall consist of all of the Members of the Company." The board of directors consisted of Epperson and Daniel Holdeman. Because Daniel Holdeman owned the larger percentage interest in the company, he was the managing member of the company and presided over the meetings of the board of directors. The term "member" is not specifically defined in the operating agreement.

{¶ 9} Section 10 deals with restrictions on transfer of a member's interest. Section 10.1 states, "Except as specifically provided otherwise in this Operating Agreement, no Member shall assign or otherwise transfer all or any part of any interest in the Company, or withdraw from the Company, without the consent of a Majority–in–Interest (other than the Member attempting to transfer the interest)." If a member seeks to assign his or her interest, the assignee may be admitted as a member only after complying with certain requirements, including

that "[t]he Company shall consent in writing to the admission of the assignee as a Member, which consent may be withheld for any reason."

{¶ 10} The provision of specific interest in resolving the issue before us is Section 11, entitled "Death of a Member." This section states that when a member dies, the successor-in-interest of the deceased member "shall immediately succeed to the interest of such member in the Company. Such Successor–in–Interest shall not become a Member of the Company unless admitted as a Member in accordance with Section 10 of this Agreement." A successor-in-interest is defined in Section 12 as "such person as the Member shall, from time to time, have designated in a notice to the Company * * *. In the event that a Member has failed to designate a Successor in Interest, or if the person designated is not then living or for any reason renounces, disclaims or is unable to succeed to such interest, the Successor in Interest shall be the executor or administrator of the deceased Member's estate, who shall hold or distribute such interest in accordance with applicable fiduciary law." The section also directs that a successor-in-interest shall not become a full member unless the company consents.

{¶ 11} Since Daniel Holdeman never executed a notice to the company designating a successor-in-interest, his widow, as executor of his estate, automatically became the successor-in-interest pursuant to Section 12. Mrs. Holdeman could not become a full member of the company without consent from the company, which the company declined to give. Thus, the language of the operating agreement implicitly restricted Mrs. Holdeman to a membership interest rather than the status of a member of the company.

{¶ 12} Typically, once an operating agreement is reviewed and it appears that the terms of the contract dictate the status of the parties, the inquiry ends because "courts presume that the intent of the parties to a contract resides in language they chose to employ in the agreement." *Shifrin v. Forest City Ents., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499. Furthermore, when "the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Id. Nevertheless, in this case, both the trial court and the court of appeals examined R.C. Chapter 1705 and found that the General Assembly has preempted this area by enacting R.C. 1705.21(A).

### Statutory Provisions

{¶ 13} R.C. 1705.21(A) provides, "If a member who is an individual dies or is adjudged an incompetent, his executor, administrator, guardian, or other legal representative may exercise all of his rights as a member for the purpose of settling his estate or administering his property, including any authority that he had to give an assignee the right to become a member."

{¶ 14} In examining this statute, both the trial court and appellate court looked at the definitions of "member" and "membership interest" set forth in the Limited Liability Company Act, R.C. Chapter 1705. "Member" is defined as a "person whose name appears on the records of the limited liability company as the owner of a membership interest in that company." R.C. 1705.01(G). A "membership interest" is defined as "a member's share of the profits and losses of a limited liability company and the right to receive distributions from that company." R.C. 1705.01(H).

{¶ 15} The terms are distinguishable in that a "member" possesses management rights, and one holding merely a "membership interest" possesses limited, economic rights. R.C. 1705.22 gives members the right to obtain "[t]rue and full information" regarding the status of the business and financial condition of the company, while R.C. 1705.18 limits the assignee of a membership interest to receiving profits, losses, and allocations of the company and specifically directs that the assignee is not "to become or to exercise any rights of a member."

{¶ 16} The appellants contend that the company's operating agreement explicitly limits a member's successor-in-interest to possession of an economic interest in the company unless consent is given. Nevertheless, while it is true that the operating agreement restricts Mrs. Holdeman as the successor-in-interest to economic rights only, R.C. 1705.21(A) expressly grants the executor of an estate the right to exercise *"all of [the decedent's] rights as a member* for the purposes of settling his estate." (Emphasis added.)

{¶ 17} Although the operating agreement seems inconsistent with the statute, Epperson and the company assert that R.C. Chapter 1705, read in its entirety, does not conflict with the terms of the operating agreement, because the General Assembly intended to limit an executor to the exercise of economic rights that the decedent held at death. They also state that other sections of R.C. Chapter 1705 considered in conjunction with R.C. 1705.21(A) show that the General Assembly did not intend to give an executor the rights of a member. They point out that under R.C. 1705.15, a member ceases to be a member upon an event of withdrawal, and death is one of the listed events. R.C. 1705.15(E). R.C. 1705.18 states that an assignee of a membership interest is not entitled to exercise the rights of a member, and R.C. 1705.20 provides the procedures by which an assignee can become a member of a limited liability company. Appellants assert that these sections plainly show that on his death, Holdeman withdrew from the company. He therefore had retained only the membership rights of an assignee, and Mrs. Holdeman is entitled to exercise only those rights.

### Statutory Precedence

{¶ 18} We have held, "It is elementary that no valid contract may be made contrary to statute, and that valid, applicable statutory provisions are parts of

every contract." *Bell v. N. Ohio Tel. Co.* (1948), 149 Ohio St. 157, 158, 36 O.O. 501, 78 N.E.2d 42. This maxim is codified in R.C. Chapter 1705. R.C. 1705.04(A) sets forth the requirements for a company's articles of organization. Besides setting forth the name of the company and the period of its duration, the articles of organization can include any other provisions "that are not inconsistent with applicable law." As a result, to the extent the operating agreement is in conflict with the statute, the statute takes precedence.

{¶ 19} The statutory provisions that Epperson and the company rely upon, R.C. 1705.15, 1705.18, and 1705.20, contain the limiting words, "[u]nless," "if," or "except as otherwise provided in the operating agreement." They all discuss in general terms the rights of assignees of membership interests. These sections do not appear to be inconsistent with the operating agreement.

{¶ 20} R.C. 1705.21(A), on the other hand, specifically sets forth the rights of legal representatives for a deceased member and grants the executor "all of [the deceased's] rights as a member for the purpose of settling his estate or administering his property." Because this section does not state "except as otherwise provided in the operating agreement," we can infer that the General Assembly did not intend R.C. 1705.21(A) to be restricted by contrary language within an operating agreement.

{¶ 21} Furthermore, as the court of appeals so aptly remarked, "R.C. 1705.21(A) refers to member rights in the past tense. In this regard, the statute specifically says that an executor may exercise all the decedent's rights as a member, 'including any authority he [the decedent] *had* to give an assignee the right to become a member.' * * * If the legislature intended to restrict executors to member rights that a decedent possesses after death, the legislature would have used the present tense. In such a situation, the legislature would have said that executors may exercise a decedent's rights, including the authority the decedent 'has' to give assignees the right to become members. However, this is not the language the legislature used." (Emphasis and bracketed material added by the court of appeals.) *Holdeman,* 107 Ohio St.3d 1681, 2005-Ohio-6480, 839 N.E.2d 402, ¶ 29.

{¶ 22} In enacting R.C. 1705.21(A), the General Assembly ensured that the legal representative of a decedent's estate has the ability to carry out an executor's fiduciary obligations to the estate's beneficiaries. The membership rights granted are limited in time and in purpose for settlement of the estate.

{¶ 23} Accordingly, we affirm the judgment of the Clark County Court of Appeals and hold that an executor of the estate of a deceased member of a limited liability company has all rights that the member had prior to death, for the limited purpose of settling the member's estate or administering his property.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER and O'CONNOR, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

---

LUNDBERG STRATTON, J., dissenting.

{¶ 24} I respectfully dissent. I believe that in enacting R.C. 1705.21, the General Assembly simply intended to clarify what rights an executor is entitled to exercise in situations that the operating agreement may not have addressed. Any broader interpretation flies in the face of limited-liability operating agreements. If the operating agreement already defines the rights of the parties upon a member's death, then no statute can interfere with those contract rights. Therefore, I would reverse the judgment of the court of appeals and hold that the operating agreement of a limited liability company controls the relationship of the remaining members and the executor.

{¶ 25} In this case, Epperson owned a 49 percent interest in Holdeman–Eros, L.L.C., and the decedent owned a 51 percent interest. Thus, in his capacity as the majority member, the decedent had been the managing member and presided over meetings of the board of directors. Through the majority's interpretation, Mrs. Holdeman, who was never intended by Epperson or the decedent to become a controlling member of the company, effectively becomes a majority member and presumably is permitted to exercise all the rights of a majority member, including presiding over meetings of the board of directors and exercising her majority vote to control the future course of the company. I do not believe that this result was intended by the General Assembly in enacting R.C. Chapter 1705.

{¶ 26} I believe that the majority's interpretation of R.C. 1705.21(A) is contrary to the express language contained in other sections of R.C. Chapter 1705, which delineates the conditions under which one may exercise the right to participate in the management of a limited liability company. See R.C. 1705.12, 1705.14, 1705.15, 1705.18, and 1705.20. Interpreting R.C. 1705.21(A) in pari materia with the remaining sections of R.C. Chapter 1705 mandates the conclusion that an executor has only the rights of an assignee of a member and not the full rights of a member unless the operating agreement provides otherwise.

{¶ 27} For example, R.C. 1705.15(E) addresses the effect of the death of a member:

{¶ 28} "Except as approved by the specific written consent of all members at the time, *a person ceases to be a member of a limited liability company upon the occurrence of any of the following events of withdrawal:*

{¶ 29} "* * *

{¶ 30} "(E) Unless otherwise provided in writing in the operating agreement, *a member who is an individual dies,* or is adjudicated an incompetent." (Emphasis added.)

{¶ 31} Thus, as of the date of his death, the decedent is considered by statute to have withdrawn from the company and to have lost his membership status.

{¶ 32} In the event that, unlike here, no operating agreement exists, I agree that pursuant to R.C. 1705.21(A), the executor of an estate of a deceased member of a limited liability company has all rights that the member had prior to death, "for the limited purpose of settling the member's estate or administering his property." But by merely reciting the language of the statute, the majority fails to determine the actual rights of an executor in this situation and therefore fails to delineate the full effect of exercising those rights.

{¶ 33} If R.C. 1705.21(A) controls over the operating agreement, then the parties need guidance as to the last phrase of the statute, "for the purpose of settling [the member's] estate or administering his property." Does this language mean merely collecting assets, assessing value, and determining the amount due the estate, which are essentially similar to the economic rights as an assignee and are duties of an executor? Or can the executor, especially if the decedent was a member who had majority control, make decisions that go to the heart of the company's operations, such as changing the direction of the business, hiring or firing other employees, and suing other parties, all under the guise of "administering his property"? After all, under the majority's interpretation, the executor is now a majority member of the board with authority to control the company, even though the executor may be unqualified for the task.

{¶ 34} I believe that by failing to clarify the statutory language, we duck the real controversy in this case, which is what actions are allowed in the executor's role of settling the estate of a deceased member of a limited liability company. We give no guidance to the executor in this situation, and in essence by assigning full membership rights to the executor, we give our blessing to any actions that she might take. I believe that we should define the statutory phrase "settling the member's estate or administering his property" as taking only those actions necessary to collect, evaluate, and distribute the assets due the estate, which is, effectively, fulfilling the duties of an executor.

{¶ 35} As noted by the concurrence of Judge Young in the appellate opinion below, "a partnership is a voluntary association and when the result as envisioned by the opinion of this court is that a minority partner becomes subject to a control of a majority partner which was not voluntarily elected[,] the result is manifestly immoral and unfair. * * * [The General Assembly] should consider adopting something akin to the Oklahoma amendment cited by the [appellate] opinion[,] which limits the rights of personal representatives to those of an

assignee of the member's interest." *Holdeman v. Epperson,* Clark App. No. 2004–CA–49, 2005-Ohio-3750, 2005 WL 1714210, ¶ 58–59.

{¶ 36} Therefore, I would define the R.C. 1705.21(A) phrase "settling [the member's] estate or administering his property" narrowly. Because the majority fails to define the statutory language at all, I would call upon the General Assembly to clarify whether R.C. 1705.21(A) controls when there is a clear operating agreement of the parties in effect on a member's death, and if so, the extent of the rights of an executor. I respectfully dissent.

O'DONNELL, J., concurs in the foregoing dissenting opinion.

---

Martin, Browne, Hull & Harper, P.L.L., Glenn W. Collier, and Randall M. Comer, for appellee.

Chernesky, Heyman & Kress, P.L.L., and Thomas L. Czechowski, for appellant Holdeman–Eros L.L.C.

Freund, Freeze & Arnold and Neil F. Freund, for appellant Louise Eros Epperson.