[Cite as *Lewanski Dev., L.L.C. v. HD Strongsville Portfolio, L.P.*, 194 Ohio App.3d 372, 2011-Ohio-3055.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95453**

---

## LEWANSKI DEVELOPMENT, L.L.C., ET AL.,

APPELLEES,

v.

## HD STRONGSVILLE PORTFOLIO, L.P., ET AL.,

APPELLANTS.

---

**JUDGMENT:**
**AFFIRMED**

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-580495

**BEFORE:** Sweeney, J., Kilbane, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 23, 2011

**ATTORNEYS FOR APPELLANTS**

**For HD Strongsville Portfolio, LP, and Home Depot U.S.A., Inc.**

Berns, Ockner & Greenberger, .L.L.C.
Timothy J. Duff
Sheldon Berns
3733 Park East Drive
Suite 200
Beachwood, OH 44122

**ATTORNEYS FOR APPELLEES**

**For Lewanski Development, L.L.C., et al.**

Taft, Stettinius & Hollister, L.L.P.
Majeed G. Makhlouf
Michael J. Zbiegien Jr.
3500 BP Tower
200 Public Square
Cleveland, OH 44114

**For Lowe's Home Centers, Inc.**

Isaac, Brant, Ledmar & Teetor, L.L.P.
David G. Jennings
Jerry L. Kaltenbach
J. Stephen Teetor
250 East Broad Street
Suite 900
Columbus, OH   43215

Lewis, Rice & Fingersh, L.C.
Benjamin J. Lipman
600 Washington Avenue
Suite 2500
St. Louis, MO   63101

(Attorneys for appellees continued on page ii)

McDonald Hopkins, L.L.C.
Ryan M. Fitzgerald
600 Superior Avenue E.
Suite 2100
Cleveland, OH 44114

**For the city of Strongsville**

Kenneth Kraus
Law Director
City of Strongsville
16099 Foltz Industrial Parkway
Strongsville, OH   44149

Kolick & Kondzer
Daniel J. Kolick
24650 Center Ridge Road
Suite 175
Westlake, OH   44145

**Also listed:**

**For Gordon Food Services, Inc., et al.**

James R. Peterson
Miller Johnson
Calder Plaza Building
250 Monroe Ave., NW, Suite 800
Grand Rapids, MI   49503-2250

**For Wal-Mart Real Estate Business Trust**

Keating Meuthing & Klekamp, P.L.L.
Thomas M. Tepe Jr.
Joseph L. Trauth Jr.
One East Fourth Street
Suite 1400
Cincinnati, OH 45202

JAMES J. SWEENEY, Judge.

{¶ 1}  Defendants-appellants, HD Strongsville Portfolio, L.P. ("HDSP") and Home Depot U.S.A., Inc. ("Home Depot"), appeal the trial court's decision granting declaratory judgment in favor of plaintiffs-appellees, Lewanski Development, L.L.C., R.E. Services No. 32, L.L.C., and TGI Pearl Road Investors, L.L.C. (collectively "the Lewanski parties").[1]  Finding no merit to the appeal, we affirm.

{¶ 2}  This appeal involves an easement for the extension of an internal roadway ("Ring Road") to connect the northern and southern sections of a triangular-shaped retail development area ("the Triangle") in Strongsville, Ohio.  The Triangle is bordered to the north by Sprague Road, to the west by Pearl Road, and to the south by Whitney Road.

{¶ 3}  In April 1994, Strongsville Retail Limited Partnership ("SRLP") undertook the development of the northern section of the Triangle and entered into a development agreement with the city of Strongsville.  Under the agreement, the "Developer" is SRLP and the "Property" is "the approximately 46 acres of real property" that became the northern section of the Triangle.  Section 5.1 of the agreement pertains to the development of the internal roadway and states as follows:

{¶ 4}  "Section 5.1  Internal Roadway.  Developer will construct the internal roadway substantially as shown on the Concept Plan (the 'Internal Roadway').  If

---

[1]Defendants Lowe's Home Centers, Inc., and the city of Strongsville are also appellees herein. Defendants Wal-Mart, Gordon Food Service, Inc., and Gaelic Financial Services, L.L.C., are not parties to the appeal.

requested, in writing, by the City, Developer will provide for the extension of the Internal Roadway for pedestrian and automobile (but not heavy vehicles or trucks) ingress and egress to the south and for subsequent use of the Internal Roadway by owners of properties to the south of the Property; provided that (i) such owners execute and deliver to Developer or subsequent owners of the Property or any affected portions thereof a mutually acceptable easement agreement which shall include, without limitation, a sharing of the maintenance costs for the Internal Roadway and such reasonable restrictions on the use of the Internal Roadway as shall be determined by Developer or subsequent owners of the Property or any affected portions thereof; and (ii) the use of the adjoining properties to the south of the Property, in the reasonable judgment of the Developer or the subsequent owners of the Property or any affected portions thereof, is not offensive or detrimental to the Property or any portion thereof."

{¶ 5} The northern section of the Triangle was developed to contain a Wal-Mart store and a retail space that was originally leased to Builders Square, Inc. SRLP owned the property that was leased to Builders Square, Inc. HDSP now owns that property and leases it to Home Depot. Wal-Mart Real Estate Business Trust ("Wal-Mart") owns the property on which the Wal-Mart store is located and on which the Ring Road extension would be built. Outlots A and B are also located in the northern section of the Triangle.

{¶ 6} In May 1994, SRLP, its then tenant Builders Square, Inc., Wal-Mart Stores, Inc., and R.E. Services, Inc., entered into an agreement of easements, conditions, and

restrictions ("1994 ECR").[2]  The 1994 ECR incorporates the terms of Section 5.1 of the 1994 development agreement and requires compliance therewith.  The city is not a party to the 1994 ECR.

{¶ 7}  Section 2.4 of the 1994 ECR contains a general prohibition against the granting of access easements for the benefit of properties outside the northern section of the Triangle "except in accordance with Section 2.1F hereof."  Section 2.1F addresses the future Ring Road expansion and incorporates the terms of Section 5.1 of the 1994 development agreement.  Section 2.1F provides as follows:

{¶ 8}  "Future Ring Road Extension.  Wal-Mart and Tenant hereby acknowledge that, pursuant to Section 5.1 of the City development agreement, Developer has agreed to provide for the extension of the Ring Road * * *.  Wal-Mart, Tenant and Developer hereby agree to comply with the terms of Section 5.1 of the City development agreement, and to amend this Agreement to provide for said extension of the Ring Road as, when and under the conditions specified therein.  Any rights, approvals or consents exercisable by Developer with respect to the extension of the Ring Road pursuant to the City development agreement shall be exercised by the Owner of the Developer Parcel, and Developer hereby assigns to Tenant all right, title and interest of Developer in such rights, approvals or consents, subject, however, to the terms and provision of the City development agreement."

---

[2]At the time, R.E. Services, Inc., was the owner of two outlot parcels.

{¶ 9} Under the 1994 ECR, the "Developer" is SRLP and references to the "Developer" include respective successors, assigns, and successors in interest in and to any fee or leasehold estate in the Developer parcel. The Developer parcel is what became the Home Depot parcel, and Home Depot was assigned all the rights and obligations of HDSP. The 1994 ECR also provides that the covenants and restrictions thereunder shall "run with the land" and "be binding upon and inure to the benefit of the successors and assigns of all or any portion of the estates of any Owner."

{¶ 10} In 2003, Lewanski Development, L.L.C. ("Lewanski") and R.E. Services No. 32, L.L.C. ("R.E. Services") began to develop the southern section of the Triangle. Lowe's Home Centers, Inc. ("Lowe's") owns property in the southern section of the Triangle, and a Lowe's store is located there. The Lewanski parties and Lowe's are not parties to the 1994 development agreement or the 1994 ECR.

{¶ 11} In November 2004, Lewanski informed Wal-Mart, HDSP, and the Home Depot that Lewanski was developing a retail shopping center in the southern section of the Triangle and provided a proposed amendment to the 1994 ECR that would allow for the extension of Ring Road. On June 15, 2005, the city sent a letter to HDSP, Home Depot, and Wal-Mart requesting under Section 5.1 of the 1994 development agreement that the extension of the internal roadway be completed and asking the parties to "work together to finalize any details on the Mutual Easement Agreement."

{¶ 12} Wal-Mart agreed to the easement.  Initially, HDSP did not object.  After learning that Lowe's was going to be in the southern section, Home Depot and HDSP objected to the easement and the extension of Ring Road.

{¶ 13} HDSP and Home Depot asserted that in their judgment, the use of the southern portion of the property by Lowe's, which is a competitor of Home Depot, is detrimental to their property.   HDSP and Home Depot claim that "the use of the Southern Shopping Center by Lowe's would decrease Home Depot's sales, and accordingly decrease the value of HDSP's fee interest and Home Depot's leasehold interest in the Home Depot parcel, a situation that would be exacerbated by joining the two shopping centers."   They also claim that connection of the internal roadway "would lead to inappropriate cut-through traffic, burdening the Home Depot parcel with increased congestion, wear and tear, and risk of accidents."

{¶ 14} Despite HDSP's and Home Depot's disapproval, in December 2005, Wal-Mart unilaterally granted the easement for the Ring Road extension through a December 2005 agreement with Lewanski and Lowe's titled Agreement of Easements, Conditions and Restrictions for Ring Road Extension ("the Lewanski – Wal-Mart Easement").

{¶ 15} Lewanski and R.E. Services filed a declaratory-judgment action asking the court to declare that Wal-Mart has the legal right to grant the easements provided for in the Lewanski – Wal-Mart Easement, that the Lewanski – Wal-Mart Easement is valid, that the

Lewanski parties may legally proceed with the construction of the Ring Road extension, and that HDSP and Home Depot have no right to stop the construction.[3]

{¶ 16} HDSP and Home Depot filed a counterclaim against the Lewanski parties and a cross-claim against the other defendants seeking a declaration of the following: that Wal-Mart has no right to extend the internal roadway except in accordance with the 1994 ECR; that under the 1994 ECR, the internal roadway may only be extended if, in the reasonable judgment of HDSP and Home Depot, the extension would not be offensive or detrimental to their property interests; that in the reasonable judgment of HDSP and Home Depot the extension of the internal roadway would be offensive or detrimental to their property interests; and that Lewanski, TGI, Lowe's, Gaelic, and GFS have no right to use an extension of the internal roadway. Wal-Mart took the position that it had the right to grant the access easement subject to the rights of HDSP and Home Depot.[4]

{¶ 17} Several motions for summary judgment were denied by the trial court. The case proceeded to a five-day bench trial. Thereafter, the trial court granted a declaratory judgment in favor of the plaintiffs and against HDSP and Home Depot on the complaint and counterclaim.

---

[3] TGI Pearl Road Investors, L.L.C., was added as a new party plaintiff after it acquired property in the southern section of the Triangle. HDSP, Home Depot, Wal-Mart, Lowe's, the city, Gordon Food Services, Inc. ("GFS"), and Gaelic Financial Services, L.L.C. ("Gaelic") were named as defendants. Although a number of parties were named as defendants, only HDSP and Home Depot are adverse parties to the plaintiffs. GFS and Gaelic did not participate in the proceedings and agreed to be bound by any judgment of the court.

[4]Wal-Mart is not a party to this appeal.

**{¶ 18}** The court determined that "under Section 5.1 of the 1994 Development Agreement, Wal-Mart, as the most directly affected owner, had the right to grant the easement for the completion of the ring road." The court further found that the testimony of the witnesses failed to establish any potential physical harm to the Home Depot parcel, and only showed speculative losses to Home Depot. Additionally, the court found that the evidence did not show an offensive use of the property. The court concluded that "the City has the right to require the ring road connection under Section 5.1 of the 1994 development agreement and that [HDSP and Home Depot] have failed to establish that they have the right to block the ring road connection."

**{¶ 19}** It is from this order that HDSP and Home Depot appeal, raising the following single assignment of error for review.

ASSIGNMENT OF ERROR ONE

The trial court erred in interpreting the 1994 ECR as permitting Wal-Mart to unilaterally grant an access easement to the Northern Shopping Center for the disputed road extension and in entering judgment in favor of Plaintiffs and against HD Strongsville Portfolio and Home Depot.

**{¶ 20}** "A declaratory judgment action allows a court of record to declare the rights, status, and other legal relations of the parties whether or not any further relief is or could be claimed. Civ.R. 57 and R.C. 2721.01 et seq." *State ex rel. AFSCME v. Taft*, 156 Ohio App.3d 37, 2004-Ohio-493, 804 N.E.2d 88, ¶26. Factual determinations made in a declaratory-judgment action are reviewed under an abuse-of-discretion standard. *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 14; *Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, Cuyahoga

App. No. 94057, 2010-Ohio-5351, ¶ 14. However, to the extent that the court is required to interpret contract provisions, that interpretation presents a question of law that we review de novo. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73Ohio St.3d 107, 652 N.E.2d 684.

{¶ 21} Ohio courts "presume that the intent of the parties to a contract is within the language used in the written instrument." Id. at ¶ 9, citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos*. (1999), 86 Ohio St.3d 270, 714 N.E.2d 898. "[A] contract is to be read as a whole and the intent of each part gathered from a consideration of the whole." Id. at ¶ 16, citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519. The terms of a contract are to be given their plain and ordinary meaning. *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 15. "[W]hen 'the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.' " *Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209, 857 N.E.2d 583, ¶ 12, quoting *Shifrin v. Forest City Ents., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499.

{¶ 22} In the instant case, the 1994 ECR contains a general prohibition against the granting of access easements for the benefit of property outside the northern section except in accordance with Section 2.1F, which pertains to the future Ring Road expansion. Pursuant to Section 2.1F, the parties agreed to comply with the terms of Section 5.1 of the

1994 development agreement. Furthermore, Section 2.1F requires the parties "to amend [the 1994 ECR]" to provide for an access easement for the extension of Ring Road "under the conditions specified" in Section 5.1 of the development agreement.

{¶ 23} Section 5.1 of the 1994 development agreement provides for the extension of the internal roadway upon a written request from the city if two conditions are satisfied. The first condition requires as follows:

> (i) [The owners of properties in the southern portion] execute and deliver to Developer or subsequent owners of the Property or any affected portions thereof a mutually acceptable easement agreement which shall include, without limitation, a sharing of the maintenance costs for the Internal Roadway and such reasonable restrictions on the use of the Internal Roadway as shall be determined by Developer or subsequent owners of the Property or any affected portions thereof[.]

{¶ 24} This provision requires that owners of properties in the southern portion execute and deliver a "mutually acceptable easement agreement" to one of several alternatives. The word "or" is most commonly used as a disjunctive and indicates "'an alternative between different or unlike things.'" *State ex rel. Rear Door Bookstore v. Tenth Dist. Ct. of Appeals* (1992), 63 Ohio St.3d 354, 361-362, 588 N.E.2d 116, quoting *Pizza v. Sunset Fireworks Co.* (1986), 25 Ohio St.3d 1, 494 N.E.2d 1115. Here, the easement agreement was not delivered to the "developer" of the northern section, nor was it delivered to "subsequent owners" of the northern section. Thus, the remaining alternative is to "any affected portions" of the northern section.

{¶ 25} "[T]he word 'any' may mean 'all,' 'some,' or 'one,' depending on the context." *In re Wyrock* (June 5, 1980), Cuyahoga App. Nos. 41305 and 41306. The

term "any" is used to qualify "affected portions" of the northern section. The easement is for the extension of Ring Road to connect the northern and the southern sections of the Triangle. From the context written, it is apparent that the phrase "any affected portions" refers to one portion of the northern section that would be affected by the extension of the internal roadway to the southern section of the Triangle. To find otherwise would render the preceding alternative of "subsequent owners" meaningless because that alternative would be one and the same as the owners of "any affected portions thereof."

{¶ 26} Based on the clear and unambiguous language of the agreement, we find that under Section 5.1 of the development agreement, Wal-Mart, as the owner of "any affected portion," had the right to grant the easement for the completion of Ring Road. Ring Road is located on the Wal-Mart parcel in the northern section of the Triangle, which would be affected by the extension of the internal roadway to the properties in the southern section of the Triangle. The evidence in the record reveals that Lewanski and Lowe's, as owners of the southern section of the Triangle, executed and delivered a "mutually acceptable" agreement to Wal-Mart, which Wal-Mart also executed. This is all that is required under Section 5.1 since this section uses the term "or" in the disjunctive and Wal-Mart is one of the owners of the affected portion of the northern parcel.

{¶ 27} We note that in its findings, the trial court referred to Wal-Mart as "the most directly affected owner" rather than "the owner of any affected portion." The dissent contends that by using the phrase "the most directly affected owner" the trial court "impermissibly inserted terms into an unambiguous contract." We find, however, that the

trial court's word choice did not alter the contract, because Wal-Mart is an owner of the affected portion. Therefore, we find that the trial court's determination that Wal-Mart had the right to grant the easement was consistent with the language of Section 5.1.

{¶ 28} The second condition of Section 5.1 requires as follows:

(ii) [T]he use of the adjoining properties to the south of the Property, in the reasonable judgment of the Developer or the subsequent owners of the Property or any affected portions thereof, is not offensive or detrimental to the Property or any portion thereof.

{¶ 29} Here again, we find that the phrase "any affected portions" encompasses any one owner of the northern section that would be affected by the extension of the internal roadway to the properties in the southern section of the Triangle. Because Wal-Mart is an affected property, Wal-Mart rightfully determined that use of the adjoining properties to the south is not offensive or detrimental to its property.

{¶ 30} Home Depot argues that the completion of Ring Road would be "offensive or detrimental" to it because the completion would result in increased competition from Lowe's and a potential loss of sales to it. However, as the trial court correctly stated, "Section 5.1 of the development agreement does not contain a use restriction or anti-competition provision." The trial court considered the evidence and the testimony presented and found that "none of the witnesses established any potential physical harm to the property, only speculative losses to Home Depot. Additionally, by completing the Ring Road there is no offensive use of the property. The combined northern and southern areas at issue constitute a large commercial shopping area with abundant parking." We find that these factual determinations were supported by competent,

credible evidence in the record.    In fact, the evidence in the record demonstrated that the completion of Ring Road would bring more customers to the shopping center.

{¶ 31} Therefore, we conclude that the trial court properly determined that Wal-Mart had the right to grant the easement under the terms of Section 5.1 of the 1994 development agreement, and that the 1994 ECR did not prohibit the grant of the easement.

{¶ 32} Accordingly, the sole assignment of error is overruled.

Judgment affirmed.

KILBANE, A.J., concurs.
GALLAGHER, J., dissents.

SEAN C. GALLAGHER, Judge, dissenting.

{¶ 33} I respectfully dissent from the majority opinion.   Rather than enforcing the clear terms of a contractual agreement between property owners, the majority applies a constrained interpretation to uphold the trial court's decision.

{¶ 34} I believe that the trial court's interpretation of the required conditions for the granting of an access easement under the 1994 ECR is contrary to the clear language expressed by the parties.   Further, the trial court impermissibly inserted terms into the unambiguous agreement.   While Wal-Mart may be a superstore, it does not possess rights that are superior to those of other property owners under the 1994 ECR.

{¶ 35} Pursuant to the 1994 ECR, Wal-Mart could not grant the requested easement unless the terms of Section 5.1 of the development agreement were met. The first

condition requires that owners of properties in the southern section execute and deliver a "mutually acceptable easement agreement" to one of several alternatives. The first two alternatives were not satisfied as the easement agreement was not delivered to the "developer" of the northern section or to the "subsequent owners" of the northern section, which is written in the plural. Thus, in order for the first condition to have been satisfied, a "mutually acceptable" easement agreement must have been delivered to "any affected portions" of the northern section.

{¶ 36} The majority acknowledges that "the word 'any' may mean 'all,' 'some,' or 'one,' depending on the context." *In re Wyrock* (June 5, 1980), Cuyahoga App. Nos. 41305 and 41306. I do not believe that under the context written, it can be construed to mean "one" or, in this case, "the most directly affected portion."

{¶ 37} Indeed, the term "any" is used to qualify "affected portions" of the northern section, which is written in the plural form. The easement is for the extension of Ring Road to connect the northern and the southern sections of the Triangle. Logically, the parties would have intended that any properties in the northern section that would be affected by the easement be provided with a mutually acceptable easement agreement. From the context written, it is apparent that the word "any" is an inclusive term and that the phrase "any affected portions" encompasses all portions of the northern section that would be affected by the extension of the internal roadway to the southern section of the Triangle.

{¶ 38} This construction does not render the preceding alternative of "subsequent owners" meaningless, because that alternative would include Outlots A and B in the northern section, which are not asserted to be "affected" by the Ring Road extension. Also, I do not find it to be determinative that the easement would physically exist on Wal-Mart's property as the 1994 ECR creates and limits property rights for the granting of access easements. The clear and unambiguous language of the agreement does not provide the unilateral power to any one affected portion to grant an easement. Rather, a mutually acceptable easement agreement must be executed and delivered to any property in the northern section that would be affected by the extension of the internal roadway.

{¶ 39} The trial court found that "under Section 5.1 of the development agreement, Wal-Mart, as the *most directly affected owner*, had the right to grant the easement for the completion of the ring road." (Emphasis added.) In doing so, the trial court impermissibly inserted terms into an unambiguous contract. "[A] court may not delete or add words to a contract when determining the parties' rights and obligations under it." *Merz v. Motorists Mut. Ins. Co.*, Butler App. No. CA2006-08-203, 2007-Ohio-2293, ¶ 54, citing *DiMarco v. Shay*, 154 Ohio App.3d 141, 2003-Ohio-4685, 796 N.E.2d 572. Moreover, a court "is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 12.

{¶ 40} Accordingly, the trial court's determination that Wal-Mart had the right to grant the easement as "the most directly affected" portion was inconsistent with the

unambiguous language of Section 5.1. Ring Road is located on the Home Depot and Wal-Mart parcels in the northern section of the Triangle. Both parcels clearly would be affected by the extension of the internal roadway to the properties in the southern section of the Triangle. The owners of the southern section of the Triangle were required to execute and deliver a "mutually acceptable" agreement to Wal-Mart as well as HDSP and Home Depot for this alternative to be satisfied.

{¶ 41} The second condition requires a determination, in the reasonable judgment of "any affected portions," that the use of the adjoining properties to the south is not offensive or detrimental to its property. This provision clearly expresses an intent to encompass all portions of the northern section that would be affected by the extension of the internal roadway to the properties in the southern section of the Triangle. Indeed, it would be illogical to allow only one property in the northern section to exercise the judgment of other affected properties. Rather, "any affected portions" have the right to determine whether the use of the adjoining properties would be offensive or detrimental to their property.

{¶ 42} Because Home Depot is an affected property, HDSP and Home Depot had the right to determine, in their reasonable judgment, whether any use of the adjoining properties to the south is offensive or detrimental to their property. Wal-Mart could not exercise the judgment of Home Depot in this regard. Rather, HDSP and Home Depot had the right, in the first instance, to make a use determination under the agreement. Further, while Section 5.1 does not contain a use-restriction or anticompetition provision,

this does not alter the conditions required for the granting of an easement under the 1994 ECR.

{¶ 43} The word "reasonable" is defined as "possessing good sound judgment." Webster's Third New International Dictionary (1986) 1892. "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597; see also *Cedar Bay Const., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202 ("Unreasonable" means "irrational"). The term "detrimental" has been defined as "causing detriment" and "harmful, damaging." Webster's Third New International Dictionary (1986) 617.

{¶ 44} The trial court found that the evidence established only speculative losses to Home Depot and that by completing Ring Road there is no offensive use. I agree that these factual determinations were supported by competent, credible evidence in the record. However, the trial court did not explicitly determine whether HDSP and Home Depot exercised their reasonable judgment. Instead, the court effectively allowed Wal-Mart, as "the most directly affected owner," to make a unilateral determination to grant the easement.

{¶ 45} This is a declaratory-judgment action to determine the "rights, status, or other legal relations" of the parties under a contract. R.C. 2721.02(A) and 2721.03. Here, the issue is whether Wal-Mart had the legal right to grant the easement for the Ring Road

extension pursuant to the 1994 ECR. The Lewanski parties, Lowe's, and the city are not parties to that agreement.

{¶ 46} Under the plain and unambiguous terms of the 1994 ECR, Wal-Mart did not have the authority to grant an easement without compliance with the conditions of Section 5.1 of the 1994 development agreement. I would find that those conditions could not be unilaterally satisfied by Wal-Mart, because Home Depot is included in the phrase "any affected portions." Further, Section 2.1F of the 1994 ECR requires an amendment to the 1994 ECR to provide for the Ring Road extension upon satisfaction of the requisite conditions.

{¶ 47} Accordingly, I believe that the trial court erred in determining that Wal-Mart had the right to grant the easement under the terms of Section 5.1 of the 1994 development agreement and in determining that the 1994 ECR did not prohibit the grant of the easement. I would reverse the judgment of the trial court and enter a declaratory judgment in favor of HDSP and Home Depot. I would declare as follows: The 1994 ECR generally prohibits Wal-Mart from granting access easements for the benefit of properties outside the northern section of the Triangle; under the 1994 ECR, Wal-Mart agreed to comply with the terms of Section 5.1 of the 1994 development agreement and to amend the 1994 ECR to provide for the extension of Ring Road upon satisfaction of the requisite conditions; Home Depot is included in the meaning of the phrase "any affected portions" under Section 5.1; and pursuant to these provisions, Wal-Mart did not have the right to unilaterally grant the Lewanski–Wal-Mart Easement.