[Cite as *IPS Elec, Servs., L.L.C. v. Univ. of Toledo*, 2016-Ohio-361.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IPS Electric Services, LLC, | : | |
| Plaintiff-Appellant/<br>Cross-Appellee, | : | No. 15AP-207<br>(Ct. of Cl. No. 2013-00528) |
| v. | : | (REGULAR CALENDAR) |
| University of Toledo, | : | |
| Defendant-Appellee/<br>Cross-Appellant. | : | |

D E C I S I O N

Rendered on February 2, 2016

*Kohrman Jackson & Krantz, Luther L. Liggett, Jr.*, **and**
*David M. Scott*, **for IPS Electric Services, LLC.**

*Michael DeWine*, **Attorney General**, *James E. Rook*, **and**
*Richard J. Silk, Jr.*, **for University of Toledo.**

APPEAL from the Court of Claims of Ohio

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant/cross-appellee, IPS Electric Services, LLC ("IPS"), appeals from a judgment of the Court of Claims of Ohio rendered in favor of defendant-appellee/cross-appellant, University of Toledo ("UT"), on IPS's breach of contract claim against UT. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} This case arises from a construction contract dispute. On September 19, 2012, UT contracted with Henning Electrical Services, LLC ("Henning"), to perform electrical work on a public improvement project involving the construction of an enclosure connecting existing buildings at the UT Health Science Campus and the remodeling of existing building space (referred to as the "project"). The contract includes "General Conditions," addressing such issues as "Contract Modifications" (Article 7) and

"Dispute Resolution" (Article 8).  The contract defines UT as the "owner" and Henning as the "contractor."  (UT exhibit No. 1.)  In October 2012, Henning changed its name to IPS.

{¶ 3}   Problems impacted the completion of the project.  Numerous times during the project, IPS corresponded with Christopher Levicki, project manager for UT, regarding the problems.  By letter dated October 24, 2012, IPS complained to UT regarding the modified scheduled completion date, and "several issues that are beyond the control of [IPS] that are adversely impacting [IPS's] progress."  (IPS exhibit D.)  The October 24, 2012 letter indicates that, in order for IPS to meet an accelerated completion schedule, "IPS will need to work overtime, increase crew size and work in shifts – all of which greatly impact productivity and increase costs."  (IPS exhibit D.)

{¶ 4}   By letter dated December 24, 2012, IPS complained to UT about "scheduling and other issues" concerning the project.  (IPS exhibit D, Dec. 24, 2012 letter, 1.)  The December 24, 2012 letter states that IPS "committed manpower and resources to meet the revised January completion date, which included additional costs to account for the recognized acceleration."  (IPS exhibit D, Dec. 24, 2012 letter, 1.)  The December 24, 2012 letter identifies numerous problems caused by UT, which impacted IPS's work, including the late delivery of the air handling units and slow responses to requests for information, resulting in the delay of overhead duct work and installation of wall studs.  Generally, the December 24, 2012 letter indicates IPS's position that UT should compensate IPS for costs associated with the acceleration of the completion schedule and delays.

{¶ 5}   On January 22, 2013, IPS sent a letter to UT indicating it had "previously provided to [UT] written notices of impacts and claims with respect to this matter.  We are arguably obligated under the contract documents to provide additional support for our claims as a follow-up to our prior submissions."  (IPS exhibit D.)  IPS stated its "unanticipated labor cost associated with schedule compression from 8/12/12 to 10/28/12 is $50,000" due to an accelerated completion date of January 2, 2013.  (IPS exhibit D.)  IPS also stated that, with a project completion date of March 15, 2013, the "cost associated with the disruptions to our performance as we described in our earlier correspondence is $110,000."  (IPS exhibit D.)  IPS further stated the "missed dry-in date" and delays in

moving the temporary patient corridors had resulted in $20,000 of additional "general conditions costs" to IPS. (IPS exhibit D.)

{¶ 6} On February 21, 2013, IPS sent a letter to UT containing "back-up information as a detailed justification to that January 22, 2013 letter * * * which [IPS] listed $160,000 of unanticipated labor costs." (IPS exhibit D.) IPS attached an addendum to the February 21, 2013 letter, detailing the additional costs as reflected in man-hours that IPS was incurring due to the accelerated calendar and delays in various areas of the project. IPS also attached proposed "Change Orders" to the February 21, 2013 letter "for these additional costs" associated with "schedule changes, delays in start of scheduled work, lack of schedule coordination, impacted worker productivity and acceleration of schedule." (IPS exhibit D.)

{¶ 7} On April 25, 2013, IPS submitted its "Certified Claim" to UT "[p]ursuant to Article 8 of the Contract General Conditions" and "for the cumulative impact of the University of Toledo and its agents for the work that IPS performed" on the project. (IPS exhibit D.) The letter states "IPS gave notice of delay and potential costs impacts in its October 24, 2012, December 24, 2012, January 22, 2013 and February 21, 2013 letters." (IPS exhibit D.) IPS identified three categories of cost impact:

> 1) $50,000 claim for schedule compression * * * [as] documented in our February 21, 2013 letter, the areas where work was affected occurred in Area A between September 9, 2012 and November 11, 2012.
>
> * * *
>
> 2) $210,000 for disruptions of performance * * * [as] documented in our February 21, 2013 letter, the areas where work was affected occurred in Areas A, B, C (Pharmacy) and the Mall for the periods of time noted in the Addendum to that letter. Since the date of the letter, there has been an additional identifiable damage totally [sic] an approximate $100,000.
>
> * * *
>
> 3) $20,000 for additional General Conditions * * * [as documented in IPS's] letters of notice to the University of Toledo as Project Owner on October 24, 2012, December 24, 2012, January 22, 2013 and February 21, 2013 and in this

certified claims letter. There is an additional claim for General Conditions because we are now substantially complete and can fully quantify the GCs. The total amount of General Conditions owed is $70,898.29.

(Emphasis deleted.) (IPS exhibit D.) The "Certified Claim" letter includes the following certification of IPS's senior project manager, Tim Rauch:

The undersigned Contractor certifies that the claim is made in good faith; that the supporting data is accurate and complete to the best of the Contractor's knowledge and belief; that the amount requested is a fair, reasonable, and necessary adjustment for which the Contractor believes the State is liable; and that the undersigned is duly authorized to certify the claim on behalf of the Contractor.

 (IPS exhibit D.)

{¶ 8} In September 2013, IPS initiated this action against UT in the Court of Claims alleging breach of contract and unjust enrichment. The case proceeded to trial on both causes of action in December 2014. The parties filed post-trial briefs, and IPS filed a motion for leave to amend the pleadings to conform to the evidence. In March 2015, the Court of Claims issued its decision addressing the merits of IPS's claims. Based on its finding that a written contract governs the relationship between the parties, the Court of Claims dismissed IPS's unjust enrichment claim. As to the breach of contract claim, the Court of Claims determined that, although IPS demonstrated that some of UT's actions constituted a breach of its contract with IPS, UT proved by a preponderance of the evidence that IPS failed to comply with the contract's dispute resolution procedure, resulting in the irrevocable waiver of any related claim.

{¶ 9} In reaching its determination that IPS had waived its claims against UT, the Court of Claims rejected a number of arguments asserted by IPS. The Court of Claims expressly rejected IPS's argument that, because it could only know its precise amount of damages once the project was fully completed, it did not need to strictly adhere to the dispute resolution procedure set forth in Article 8 of the contract. In rejecting this argument, the Court of Claims reasoned that the claim initiation process set forth in Articles 8.1.1 and 8.1.2 must be initiated within ten days after the occurrence of the event giving rise to the claim, not once the "contractor is able to precisely calculate its damages at the conclusion of the project." (Mar. 9, 2015 Decision, 7.) The Court of Claims also

rejected IPS's argument that UT's repeated refusal to entertain its claims negated IPS's obligation to pursue administrative remedies. As to this argument, the Court of Claims noted that IPS could not avoid the procedures set forth in Article 8, even if there was little chance of success. Lastly, the Court of Claims rejected IPS's argument that UT waived strict compliance with Article 8's dispute resolution procedure because the court found that the evidence demonstrated that UT insisted on strict compliance with the notice and substantiation provisions identified in Article 8.

{¶ 10} Based on the Court of Claims's determination that IPS waived its claims against UT, the Court of Claims entered judgment in favor of UT. The Court of Claims also rendered moot IPS's motion for leave to amend the pleadings to conform to the evidence.

{¶ 11} IPS appeals and UT cross-appeals.

## II. Assignments of Error

{¶ 12} IPS assigns the following errors for our review:

[1.] The trial court erred in finding that, notwithstanding that the University breached its construction contract, the dispute resolution procedure caused a forfeiture of damages, a windfall to the University.

[2.] In applying the University's contract procedure, the trial court erred by requiring the construction contractor to undertake the impossible, effecting the University's "no damages for delay" policy.

[3.] In considering damages, the trial court erred in overruling IPS's Motion to Amend the Pleadings to conform the damages claimed to the evidence tried.

{¶ 13} In its cross-appeal, UT assigns the following error for our review:

[1.] Although the trial court correctly held that IPS's claim nevertheless failed because IPS did not comply with the contractual dispute resolution provisions in Article 8, the Trial Court erred in stating that the University breached its contract with IPS.

## III. Discussion

For ease of analysis, we will address IPS's assignments of error out of order.

## A. IPS's Assignments of Error

## 1. IPS's Second Assignment of Error — "No Damages for Delay"

{¶ 14} In its second assignment of error, IPS asserts the Court of Claims's application of the contract erroneously enforced UT's unlawful "no damages for delay" policy.

{¶ 15} The construction and interpretation of written contracts involves issues of law reviewed de novo by appellate courts. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d. 241 (1978), paragraph one of the syllabus. The purpose of contract construction is to realize and give effect to the parties' intent. *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. "[T]he intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). When " 'the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.' " *Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209, ¶ 12, quoting *Shifrin* at 638.

{¶ 16} Here, the Court of Claims found that IPS waived its claims against UT arising under the contract based on the court's application of Article 8 of the contract's "General Conditions". Article 8, titled "Dispute Resolution," details the procedure for submitting and substantiating a claim. It provides in part as follows:

> **8.1 Initiation of a Claim**
>
> **8.1.1** Every claim shall accrue upon the date of occurrence of the event giving rise to the claim.
>
> **8.1.2** Except as provided under paragraph 2.15, the Contractor shall initiate every claim by giving written notice of the claim to the A/E and the Contracting Authority within 10 days after the occurrence of the event giving rise to the claim[.]
>
> * * *
>
> **8.1.4** The Contractor's failure to initiate a claim as and when required under this paragraph 8.1 shall constitute the Contractor's irrevocable waiver of the claim.

**8.2 Substantiation of Claims**

**8.2.1** Within 30 days after the initiation of a Claim, the Contractor shall submit 4 copies of all information and statements required to substantiate a claim as provided in this Article 8 and all other information which the Contractor believes substantiates the claim.

**8.2.4** The Contractor's failure to comply with the requirements of this paragraph 8.2 shall constitute an irrevocable waiver of any related claim.

* * *

**8.5 Certification of the Claim**

**8.5.1** The Contractor shall certify each claim within 30 days after initiating the claim under paragraph 8.1 or before Contract Completion, whichever is earlier, by providing the notarized certification specified in subparagraph 8.5.1.1, signed and dated by the Contractor:

**8.5.1.1** "The undersigned Contractor certifies that the claim is made in good faith; that the supporting data is accurate and complete to the best of the Contractor's knowledge and belief; that the amount requested is a fair, reasonable, and necessary adjustment for which the Contractor believes the State is liable; and that the undersigned is duly authorized to certify the claim on behalf of the Contractor."

* * *

**8.5.3** The Contractor's failure to comply with the requirements of this paragraph 8.5 shall constitute an irrevocable waiver of any related claim.

(UT exhibit 3.)

{¶ 17} IPS generally argues the contract at issue violates Ohio law's prohibition against "no damages for delay" clauses. In the state construction contract context, "no damages for delay" clauses are provisions that preclude "recovery of damages resulting from delay caused by public authorities." *Dugan & Meyers Constr. Co. v. Ohio Dept. of Adm. Servs.*, 113 Ohio St.3d 226, 2007-Ohio-1687, ¶ 35; *see Carrabine Constr. Co. v. Chrysler Realty Corp.*, 25 Ohio St.3d 222, 228 (1986) ("no damages for delay" clauses

"exculpate a contractee from liability for damages suffered by a contractor by reason of being delayed in the performance of its work").

{¶ 18} In Ohio, "no damages for delay" clauses violate public policy and thus are invalid. R.C. 4113.62(C)(1) provides in pertinent part: "Any provision of a construction contract * * * that waives or precludes liability for delay during the course of a construction contract when the cause of the delay is a proximate result of the owner's act or failure to act, or that waives any other remedy for a construction contract when the cause of the delay is a proximate result of the owner's act or failure to act, is void and unenforceable as against public policy."

{¶ 19} Before the enactment of R.C. 4113.62(C)(1) in 1998, "no damages for delay" clauses were standard in state construction contracts and were considered valid and enforceable in Ohio. *Cleveland Constr., Inc. v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. No. 07AP-574, 2008-Ohio-1630, ¶ 10; *Dugan & Meyers Constr. Co.* at ¶ 33. However, as a result of the enactment of R.C. 4113.62(C)(1), "an owner cannot cause a delay, and then avoid the natural consequences for causing the delay by using boilerplate contract language." *Cleveland Constr., Inc.* at ¶ 19. For example, in *Cleveland Constr., Inc.*, this court invalidated a clause purporting to limit the remedies of the contractor, including precluding compensation for delay, even when the delay was caused by the owner. *Id.* at ¶ 8-9, 19, citing R.C. 4113.62(C)(1).

{¶ 20} According to IPS, general condition 4.1.2 of the contract at issue includes an unlawful no damages for delay clause. IPS also challenges on the same basis the provisions of Article 8 that include claim waiver language, general conditions 8.1.4, 8.2.4, and 8.5.3. Contrary to IPS's assertions, however, these provisions do not contain a clause prohibited by R.C. 4113.62(C)(1).

{¶ 21} General condition 4.1.2 addresses delays attributable to other contractors and limits the state's liability as to those delays. The provision states in part: "the State's liability to the Contractor for any injury, damage or expense resulting from interference, hindrance, disruption or delay attributable to a Separate Contractor or a Person for whom a Separate Contractor is legally responsible is limited to an extension of the Contract Time." (UT Exhibit 3.) Because general condition 4.1.2 does not limit UT's liability due to a delay caused by UT, it is not prohibited by R.C. 4113.62(C)(1). *See J&H Reinforcing &*

*Structural Erectors, Inc. v. Ohio School Facilities Comm.*, 10th Dist. No. 12AP-588, 2013-Ohio-3827, ¶ 84 ("Sections 4.1.2 and 4.1.2.1 apply to limit a contractor's remedies only where a contractor's delay is caused by another contractor. R.C. 4113.62 invalidates contractual provisions that preclude liability for delay when the delay is caused by the owner's act or failure to act."). Additionally, IPS's reference to this provision is unavailing because the Court of Claims did not apply this provision to reach its judgment in favor of UT.

{¶ 22} General conditions 8.1.4, 8.2.4, and 8.5.3, also do not contain "no damages for delay" clauses. Pursuant to these general conditions, a contractor's failure to comply with the procedural dispute resolution provisions of Article 8, as to any claim arising under the contract, results in an irrevocable waiver of the claim. Thus, Article 8 procedurally bars IPS's breach of contract claim because IPS failed to comply with the dispute resolution procedures. Article 8 does not, however, bar or limit any claim on the basis of the substance of the claim. Therefore, these contractual terms are not the type prohibited as a matter of public policy by R.C. 4113.62(C)(1). *Compare Cleveland Constr., Inc.* In sum, IPS fails to demonstrate the contract at issue violates Ohio's prohibition against no damages for delay clauses.

{¶ 23} Accordingly, IPS's second assignment of error is overruled.

**2. IPS's First Assignment of Error – Fairness of Applying Article 8**

{¶ 24} In its first assignment of error, IPS asserts the Court of Claims erroneously created a "windfall" for UT by finding UT not liable as to IPS's breach of contract claim based on its misapplication of the dispute resolution provisions of the contract. IPS contends that the Court of Claims erred in ruling in UT's favor because the equities weighed against applying the Article 8 waiver provisions. In support of this contention, IPS argues it was unfair for the Court of Claims to require IPS's strict compliance with the Article 8 requirements because IPS was waiting for UT to sign change orders under Article 7, because IPS repeatedly notified UT of its complaints regarding project scheduling and related issues, and because IPS could not know the extent of its damages until the conclusion of the project.

{¶ 25} Contrary to IPS's arguments, "courts cannot decide cases of contractual interpretation on the basis of what is just or equitable." *Cleveland Constr., Inc. v. Kent*

*State Univ.*, 10th Dist. No. 09AP-822, 2010-Ohio-2906, ¶ 31.  IPS suggests that its strict compliance with Article 8 would have been a vain act.  But the Article 8 process remains operative even if the contractor can demonstrate that the Article 8 adjudicators were unlikely to provide the relief sought.  *Id.* at ¶ 42-44, *overruling Conti Corp. v. Ohio Dept. of Adm. Servs.*, 90 Ohio App. 3d 462 (10th Dist.1993).  Also, the evidence presented at trial supported the Court of Claims's finding that UT insisted on IPS's strict compliance with the notice and substantiation provisions of Article 8.  In particular, on March 5, 2013 (approximately 50 days before IPS sent its "Certified Claim" to UT), UT sent a letter to IPS indicating its position that IPS had waived its claims because it failed to comply with Article 8.  Furthermore, IPS's reference to Article 7 lacks merit because its breach of contract claim was based on UT's alleged misconduct under the terms of the contract.  IPS's reliance on Article 7 is essentially an attempt to circumvent its failure to comply with Article 8's dispute resolution procedure.  Lastly, pursuant to general conditions 8.1.1 and 8.1.2, IPS was required to provide written notice of its claim within ten days after the occurrence of the event giving rise to the claim.  As noted by the Court of Claims, initiation of a claim pursuant to the contract's dispute resolution procedures was not contingent on IPS's ability to precisely calculate its damages.  Therefore, we are unpersuaded by IPS's contention that it was inequitable to apply the Article 8 waiver provisions.

{¶ 26} For these reasons, IPS's first assignment of error is overruled.

### 3.  IPS's Third Assignment of Error — Proposed Amendment of Pleadings

{¶ 27} In its third assignment of error, IPS asserts the Court of Claims erred in denying its motion to amend the pleadings to conform the alleged damages to the evidence.  IPS argues the Court of Claims should have permitted IPS to amend the pleadings because IPS submitted its motion in response to the Court of Claims's indication at trial that IPS might not be permitted to seek damages in excess of the amount administratively claimed.

{¶ 28} IPS's third assignment of error incorrectly indicates the Court of Claims ruled on the merits of IPS's motion for leave to amend the pleadings.  The Court of Claims found that IPS did not comply with the notice and substantiation provisions in Article 8, and therefore IPS had waived any claim under the contract.  Based on this determination,

it was unnecessary for the Court of Claims to rule on the merits of the motion for leave to amend the pleadings. Consequently, the Court of Claims denied as moot IPS's motion for leave to amend the pleadings. Because we have overruled IPS's challenge to the Court of Claims's determination that IPS waived any claim under the contract, we find no error in the Court of Claims denying as moot IPS's motion for leave to amend the pleadings. Accordingly, IPS's third assignment of error is overruled.

## B.  UT's Cross-Assignment of Error

{¶ 29} In its cross-assignment of error, UT asserts that, although the Court of Claims correctly entered judgment in its favor, the Court of Claims erred in stating that UT breached its contract with IPS. UT seeks confirmation from this court that the statement that UT breached its contract with IPS constituted dicta and is therefore neither binding nor the law of the case. Substantively, UT argues it did not breach its contract with IPS.

{¶ 30} Based on our resolution of IPS's assignments of error, UT's cross-assignment of error is moot. Cross-assignments of error contingent on this court's reversal of the trial court's judgment are rendered moot by affirmance of that judgment. *Frowine v. Hubbard*, 10th Dist. No. 99AP-496 (Feb. 15, 2000). The substance of UT's cross-assignment of error presents an issue for review if we were to reverse the judgment entered in favor of UT. Because we have overruled IPS's three assignments of error, the judgment of the Court of Claims must be affirmed. Consequently, UT's cross-assignment of error is moot.

## IV.  Disposition

{¶ 31} Having overruled all three of IPS's assignments of error, and having found UT's cross-assignment of error to be moot, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

TYACK and HORTON, JJ., concur.

_____