LAGER, APPELLEE, *v.* MILLER–GONZALEZ ET AL.; NATIONWIDE
MUTUAL FIRE INSURANCE COMPANY, APPELLANT.

[Cite as *Lager v. Miller–Gonzalez,* 120 Ohio St.3d 47, 2008-Ohio-4838.]

(Nos. 2007–1760 and 2007–1762—Submitted June
3, 2008—Decided October 1, 2008.)

O'CONNOR, J.

{¶ 1} In this wrongful-death case, we address language in an insurance policy offered by appellant, Nationwide Mutual Fire Insurance Company, that provides uninsured- and underinsured-motorist coverage ("UM") to insureds "because of bodily injury suffered" but that also contains an other-owned-auto exclusion that denies coverage "for bodily injury or derivative claims."

{¶ 2} The trial court and court of appeals concluded that the language in the exclusion was ambiguous and accordingly construed the policy in favor of coverage of appellee, Fred L. Lager as administrator of the estate of his daughter, Sara Lager ("Sara").

{¶ 3} We reverse.

### RELEVANT BACKGROUND

{¶ 4} Sara died from injuries sustained in an automobile accident that occurred while she was a passenger in her own car, which was then being driven by her boyfriend, Ryan Miller–Gonzalez. There is no dispute that Sara's death was caused by injuries sustained in the accident.

{¶ 5} At the time of the accident, Sara's vehicle was insured by a policy issued to her by Nationwide. The policy provided UM coverage of $50,000 for each person and $100,000 for each occurrence.

{¶ 6} Sara's parents, Fred and Cathy Lager ("the Lagers"), also had a vehicle that was insured by Nationwide through a separate motor vehicle policy. The Lagers' policy provided UM coverage of $300,000 for each person and $300,000 for each occurrence for the Lagers or a "relative." For purposes here, there is

no dispute that Sara was a "relative" of the Lagers and that her vehicle was "uninsured" under the terms of the Lagers' policy.[1]

{¶ 7} The UM endorsement in the Lagers' policy stated: "**We** will pay compensatory damages, including derivative claims, that **you** or a **relative** are legally entitled to recover from the owner or driver of an **uninsured motor vehicle** under the tort law of the state where the **motor vehicle** accident occurred, *because of bodily injury* suffered by **you** or a **relative** and resulting from the **motor vehicle** accident. Damages must result from a **motor vehicle** accident arising out of the: 1. ownership; 2. maintenance; or 3. use; of the **uninsured motor vehicle**." (Boldface sic; italics added.)

{¶ 8} The policy defined "**BODILY INJURY**" as "a) physical injury; b) sickness; c) disease; or d) resultant death; of any person which results directly from a **motor vehicle** accident." (Boldface sic.)

{¶ 9} The Lagers' policy also contained an "other owned auto" exclusion that is critical to our analysis. That exclusion states that "coverage does not apply to anyone *for bodily injury* or derivative claims: * * * 3. While any **insured** operates or occupies a **motor vehicle**: a) owned by: b) furnished to; or c) available for the regular use of; **you** or a **relative,** but not insured for Auto Liability coverage under this policy." (Boldface sic; italics added.)

{¶ 10} After Nationwide denied coverage under the Lagers' policy, appellee filed suit in the Court of Common Pleas of Lucas County.[2] Nationwide argued various theories to support the denial, only one of which is relevant here.

{¶ 11} On cross-motions for summary judgment, the trial court rejected Nationwide's assertion that coverage was not available to the Lagers because of the other-owned-auto exclusion. The court reasoned that the other-owned-auto exclusion was ambiguous because it stated that coverage did not apply to claims *for* bodily injury while, at the same time, the policy also stated that UM coverage was available for claims *because of* bodily injury. Citing the Tenth District's opinion in another wrongful-death case in which similar policy language was at issue, see *Hall v. Nationwide Mut. Fire Ins. Co.*, 10th Dist. No. 05AP–305, 2005-

---

1. The definition section of UM coverage defined an "**uninsured motor vehicle**" as "a motor vehicle for which bodily injury liability coverage limits or other security or bonds are in effect; however, their total amount available for payment is less than the limits of this coverage." (Boldface sic.) The parties agreed that Sara's vehicle was uninsured under this definition, but there was a continuing dispute in the trial court and in the court of appeals regarding Sara's status as a "relative." The court of appeals affirmed the finding that Sara was a "relative," and that issue is not before us. We proceed under the assumption that Sara was a relative for purposes of UM coverage without evaluating the propriety of that conclusion.

2. Appellee also sued Miller–Gonzalez in the same case. That claim was resolved by the parties and is not relevant here.

Ohio-4572, 2005 WL 2100627, the trial court found that the policy language was ambiguous. It construed the policy in favor of coverage and held that the Lagers were entitled to judgment as a matter of law.

{¶ 12} In summary fashion, the Sixth District affirmed. Its analysis of *Hall* was limited to three sentences: "*Hall* examined the exact same policy language applied in circumstances materially the same as those presented here. The *Hall* court found this language ambiguous. * * * We are persuaded that this is the proper interpretation of this insurance contract." *Lager v. Gonzalez*, Lucas App. No. L–07–1022, 2007-Ohio-4094, ¶ 30.

{¶ 13} The Sixth District subsequently certified its decision in this case as in conflict with the Third District's decision in *Tuohy v. Taylor*, Defiance App. No. 4–06–23, 2007-Ohio-3597, 2007 WL 2027909. We recognized the conflict, 116 Ohio St.3d 1435, 2007-Ohio-6518, 877 N.E.2d 988, and asserted discretionary jurisdiction as well, 116 Ohio St.3d 1438, 2007-Ohio-6518, 877 N.E.2d 990, to address whether an other-owned-auto exclusion that excludes coverage "for bodily injury" is ambiguous if the policy also contains language that provides UM coverage "because of bodily injury suffered."

## Analysis

{¶ 14} Our analysis of this question of insurance law is governed by familiar principles.

{¶ 15} "An insurance policy is a contract whose interpretation is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. Contract terms are to be given their plain and ordinary meaning. *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 436 N.E.2d 1347. If provisions are susceptible of more than one interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.' *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. Additionally, 'an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded.' (Emphasis sic.) *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096." *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6.

{¶ 16} Although ambiguous provisions in an insurance policy must be construed strictly against the insurer and liberally in favor of the insured, see, e.g., *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus, it is equally well settled that a court cannot create ambiguity in a contract where there is none. See, e.g., *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119, 661 N.E.2d

1005. Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation. Id. at 119–120, 661 N.E.2d 1005.

{¶ 17} As we have observed, the Sixth District's conclusion that Nationwide's policy is ambiguous was based on the Tenth District's decision in *Hall*. Because the Sixth District cited *Hall* but did not interpret it, we turn to *Hall* itself.

{¶ 18} Although the Tenth District decided *Hall* in 2005, the analysis in that case was driven by two cases that the Tenth District had decided more than ten years earlier, *Newsome v. Grange Mut. Cas. Co.* (Feb. 23, 1993), Franklin App. No. 92AP–1172, 1993 WL 51140, and *Leonhard v. Motorists Mut. Ins.* Co. (Mar. 3, 1994), Franklin App. No. 93AP–449, 1994 WL 67716. Those cases arose in an era governed by statutes and case law that since have been amended, revised, and abandoned.

{¶ 19} Indeed, at the time that *Newsome* and *Leonhard* were decided, this court was holding that exclusions from UM coverage were void and unenforceable because they eliminated or reduced coverage that was required by statute. See, e.g., *Stanton v. Nationwide Mut. Ins. Co.* (1993), 68 Ohio St.3d 111, 623 N.E.2d 1197, syllabus ("for fee" exclusion to UM coverage was unenforceable); *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309, syllabus ("An automobile insurance policy may not eliminate or reduce uninsured or underinsured motorist coverage, required by R.C. 3937.18, to persons injured in a motor vehicle accident, where the claim or claims of such persons arise from causes of action that are recognized by Ohio tort law").

{¶ 20} At that time, there was significant uncertainty in Ohio law about the validity of any exclusion, including other-owned-vehicle exclusions, because of our decisions in cases such as *Alexander* and *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438, paragraph three of the syllabus (invalidating other-owned-vehicle exclusions in UM coverage).

{¶ 21} In response to those judicial decisions and their progeny, the General Assembly has repeatedly amended R.C. 3937.18 to supersede our holdings. See, e.g., *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000), 88 Ohio St.3d 480, 484, 727 N.E.2d 1265.

{¶ 22} At oral argument, Nationwide suggested that it had developed the language of its policy from the statutory language of R.C. 3937.18(A)(1) as it was amended in 1997. See Section 1, Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2372, 2372–2377.[3] The 1997 amendments were designed to allow insurers to limit

---

3. {¶ a} Section 1, Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2372, rewrote this section, which prior thereto read:

{¶ b} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law *for bodily injury or death* suffered by any person

UM coverage to accidents in which an insured suffers bodily injury. *Hedges v. Nationwide Mut. Ins. Co.*, 109 Ohio St.3d 70, 2006-Ohio-1926, 846 N.E.2d 16, ¶ 25. Nationwide asserts that it was proper for insurers to use the statutory phrases "for bodily injury" and "because of bodily injury" in its policy because those phrases were significant for defining coverage properly during a period in which the law was in constant flux.

{¶ 23} That argument has some intuitive appeal, and we agree generally that precedent from the era in which *Newsome* and *Leonhard* arose is not compelling in the area of current Ohio insurance law. It is not necessary for us to reach Nationwide's argument regarding the source of the wording in its policy, however, because we find that the policy's definitions of bodily injury are dispositive of the issue here.

{¶ 24} As noted earlier, the policy defines bodily injury to include death. Thus, there is no question that the claim here arises from a "bodily injury," i.e., Sara's death.

{¶ 25} As Nationwide conceded at oral argument, by operation of the UM endorsement, the Lagers' policy would have afforded them that coverage because they and Sara were insureds who suffered losses because of bodily injury, i.e., Sara's death, caused by an underinsured driver. But the Lagers' policy also contained a valid exclusion that disclaimed coverage to anyone for bodily injury or derivative claims while an insured was operating or occupying a vehicle owned by the Lagers or a relative that was not insured for liability coverage under the policy.

{¶ 26} There is nothing ambiguous, uncertain, or unclear about the meaning of that exclusion. As the Third District properly recognized in the conflict case, other-owned-auto exclusions that disclaim UM coverage represent a clear intent to limit coverage for bodily injuries incurred in "the vehicles specifically covered under the insurance policy." *Tuohy*, 2007-Ohio-3597, 2007 WL 2027909, ¶ 19. See also *Kotlarczyk v. State Farm Mut. Auto. Ins. Co.*, Lucas App. No. L–03–

arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
{¶ c} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection *for bodily injury or death* under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles *because of bodily injury, sickness, or disease, including death,* suffered by any person insured under the policy." (Emphasis added.) Section 1, Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 205, 210.

1103, 2004-Ohio-3447, 2004 WL 1468336, at ¶ 61 (Lanzinger, J., dissenting) ("The stated intent is to limit coverage to vehicles specifically identified to the policy").

{¶ 27} Here, there is no dispute that Sara was occupying a vehicle that was not insured under the Lagers' policy when she sustained bodily injury. Thus, the exclusion operated as it was intended: to limit the policy's coverage under the clearly defined conditions set forth in the exclusion.

{¶ 28} The Lagers are correct that they are legally entitled to recover under Ohio tort law from Miller–Gonzalez for the presumptive damages they sustained as the result of Sara's death. See R.C. 2125.02(A). But that does not mean that Nationwide must pay for those damages.

{¶ 29} The opinions rendered by the Sixth and Tenth Districts have stated that in some scenarios there may be meaningful distinctions between "for bodily injury" and "because of bodily injury," but that assertion has not been sufficiently established by their analyses. The mere potential for ambiguity in a clause in a contract is not sufficient to establish that the provision is susceptible of more than one reasonable interpretation.

{¶ 30} Moreover, the Lagers' argument that their injuries are "because of" Sara's bodily injury, not "for" Sara's bodily injuries, is a semantic distinction. Though their wrongful-death claim arose "because of" Sara bodily injury, i.e., her death, any coverage "for" her bodily injury was extinguished because her bodily injury arose when she was in a motor vehicle that was not an insured vehicle under the Lagers' policy.

{¶ 31} The purpose of UM insurance is to put an injured policyholder in the same position he would have been in if the tortfeasor had carried sufficient liability insurance. See Martin v. Midwestern Group Ins. Co., 70 Ohio St.3d at 485, 639 N.E.2d 438 (Moyer, C.J., dissenting), citing Sexton v. State Farm Mut. Auto. Ins. Co. (1982), 69 Ohio St.2d 431, 436, 23 O.O.3d 385, 433 N.E.2d 555. To permit coverage in circumstances like those presented here would improperly allow "a person who owns more than one motor vehicle [to] choose not to insure one vehicle and bear no financial risk for the decision because he will be deemed to have in effect purchased liability coverage for the vehicle he decided not to insure if he is struck by another uninsured motorist." Martin, id.

{¶ 32} We therefore answer the certified question in the negative and hold that the other-owned-auto exclusion clearly and unambiguously applied to this claim and that Nationwide's motion for summary judgment should have been granted on that basis.

Judgment reversed.

LUNDBERG STRATTON, CUNNINGHAM, and SLABY, JJ., concur.

O'DONNELL, J., concurs in judgment only.

MOYER, C.J., dissents.

PFEIFER, J., dissents with opinion.

PENELOPE R. CUNNINGHAM, J., of the First Appellate District, sitting for LANZINGER, J.

LYNN C. SLABY, J., of the Ninth Appellate District, sitting for CUPP, J.

---

**PFEIFER, J., dissenting.**

{¶ 33} The majority opinion blithely declares that "the Lagers' argument that their injuries are 'because of' Sara's bodily injury, not 'for' Sara's bodily injuries, is a semantic distinction." The majority opinion apparently ignores the fact that the insurance company made the semantic distinction, not the Lagers. The insurance company, not the Lagers, crafted the insurance contract using different words, even though the insurer now contends, because it pleases the insurer, that "there is no rational distinction between the phrases 'for bodily injury' and 'because of bodily injury.'" If there is no rational distinction, why didn't the insurance company use the same phrase—was it intentionally attempting to confuse its policy holders? Insurance contracts are difficult enough to understand, even for professionals, without the insertion of different phrases to purportedly mean the same thing.

{¶ 34} There could be a difference between "for" and "because of" in this policy. If a person was injured and received $100 in compensation and the person's mother, who witnessed the injury, received $50 in compensation, most third-grade students would recognize that the injured person received compensation "for" her injury and that the mother received compensation "because of" the injury to her daughter. "For" and "because of" are not synonymous; for example, people do not read legal opinions or insurance contracts "because of" hours, but they can read them "for" hours. And yet this court sees only the "mere potential for ambiguity" between "for" and "because of." I readily admit that "for" and "because of" can mean the same thing, as in "void for vagueness" and "void because of vagueness." But "for" and "because of" do not always mean the same thing, and there is no way to know whether they do in this insurance contract. When "'provisions are susceptible of more than one interpretation, they "will be construed strictly against the insurer and liberally in favor of the insured,"'" except, apparently, today. Majority opinion at ¶ 15, quoting *Sharonville v. Am. Employers Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6, quoting *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. Based on the majority opinion's reasoning, I would

suggest that there is no rational distinction between "mere potential for ambiguity" and "susceptible of more than one interpretation," and strictly construe the contract against the insurer. I would affirm the sound reasoning and judgment of the court of appeals. I dissent.

———————

W. Randall Rock, for appellee.

Joyce V. Kimbler and Edward T. Mohler, for appellant.