**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0699n.06

**No. 11-3818**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 29, 2012*

LEONARD GREEN, Clerk

EXPRESS PACKAGING OF OH, INC.,

    **Plaintiff-Appellant,**

v.

AMERICAN STATES INSURANCE CO.,

    **Defendant-Appellee.**

                  /

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE:    DAUGHTREY and CLAY, Circuit Judges; CLELAND, District Judge.[*]

    **CLAY, Circuit Judge.**  Plaintiff Express Packaging of OH, Inc. appeals an order granting summary judgment to Plaintiff's insurer, Defendant American States Insurance Company, on its claim that Defendant breached its duty to indemnify Plaintiff under the terms of its insurance policy. For the reasons that follow, we **AFFIRM**.

**BACKGROUND**

    Plaintiff is an Ohio corporation "engaged in the business of wrapping and packaging products for various food producers." Plaintiff insured its business through a commercial general liability (CGL) insurance policy with Defendant. In 2008, Plaintiff was hired to package cans of dog food for its customer, Mars Petcare US ("Mars"). Plaintiff was invited to Mars' factory, where it was given a portion of the factory to set up its equipment and perform its packaging services. Mars

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

prepared and canned the dog food, grouped the food into cases consisting of a single layer of twenty-four cans, wrapped the cases in cellophane to prevent the cans from shifting, and transported the cases to Plaintiff's workspace. Once Plaintiff received the cases, it would first remove the cellophane overlay with a machine it created and owned, called the "automated cutting conveyor system." The machine operated as a table fitted with blades on each side that were designed to cut away the cellophane but leave the cans untouched. Plaintiff's contracted employees would then remove the cans from the cases, combine the cans into variety-flavored packages, and re-wrap the packages with consumer-ready plastic wrap containing Mars' brand and advertising information.

Sometime between July to September 2008, Plaintiff's automated cutting conveyor system malfunctioned and punctured Mars' cans in the course of removing the cellophane from around the cans. Once cut open, the dog food spoiled and the cans exploded. Mars recalled approximately 821,424 cases of dog food and destroyed 13,261 of them. Plaintiff voluntarily compensated Mars for the $241,524 loss it suffered, though the parties never determined the cause of the machine's malfunction. Prior to compensating Mars, Plaintiff notified Defendant of Mars' liability claim and ultimately sought full indemnification under its insurance policy for the amount it had paid to Mars. When Defendant refused to indemnify Plaintiff on the ground that Mars' claim was not covered in the policy, Plaintiff filed the present action. The case was removed to federal court based on diversity jurisdiction, where the court granted summary judgment to Defendant. Plaintiff timely appealed.

## DISCUSSION

We review *de novo* a district court's order granting summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts and reasonable inferences in the light most favorable to Plaintiff as the nonmoving party. *Holloway*, 220 F.3d at 772.

Under Ohio law, which the parties agree governs this case, the interpretation of an insurance contract is a question of law. *United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir. 1999); *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008). "A policy of insurance is a contract and like any other contract is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 164 N.E.2d 745, 747 (Ohio 1960); *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001). Policy exclusions must be clear to combat the general presumption that a claim is included in a policy. *Andersen*, 757 N.E.2d at 332 (citing *Home Indemn. Co. of N.Y. v. Plymouth*, 64 N.E.2d 248 (Ohio 1945)). "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Lane v. Grange Mut. Cos.*, 543 N.E.2d 488, 490 (Ohio 1989). "[I]n order to defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." *Andersen*, 757 N.E.2d at 332 (internal quotation marks omitted). "Ambiguity exists only where a term cannot be

3

determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991); *see Sunoco, Inc. v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011).

Plaintiff argues that Defendant must indemnify it for the losses it suffered in the Mars dog food incident, because that accident is covered under Coverage A of the insurance policy for "property damage caused by an occurrence that takes place within the coverage territory." Defendant, however, points to Coverage A exclusions j (subsections 4 and 6), k, *l*, and n. The district court found that Plaintiff's claim initially fell within Coverage A, but that exclusion j(6) ultimately precluded its recovery.

Exclusion j(6) of the policy provides, in relevant part, that Defendant will not indemnify loss for "property damage" to:

> [t]hat particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

"Property damage" is defined in relevant part as "[p]hysical injury to tangible property, including all resulting loss of use of that property." The policy also defines the term "your work" to mean "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations."

We find that the cans of dog food were tangible property that was physically injured when they were nicked, thus fitting within the "property damage" requirement. We also find that Plaintiff's work involved the service of handling the cans and removing the cellophane casing from the cans. In the process of performing this service, Plaintiff's equipment malfunctioned and damaged the cans. Its work on the cans was thus "incorrectly performed." The policy language

appears unambiguous as applied to the facts of Plaintiff's claim, and a straightforward reading of that language demonstrates that the damage to the cans is excluded from coverage by exclusion j(6). *See Andersen*, 757 N.E.2d at 332.

As noted by the district court, several decisions of the Ohio Court of Appeals support our holding. Most analogous is the decision in *Welfle, Inc. v. Motorist Insurance Group*, which held that a CGL j(6) exclusion applied where, in the course of removing asphalt from a bridge surface, the insured's rotomill malfunctioned and damaged the underlying bridge concrete deck. No. 06CA0063-M, 2007 WL 1174652, at *3 (Ohio Ct. App. Apr. 23, 2007) (explaining that the exclusion applied because the insured "misused its rotomill while using it to remove asphalt from the bridge deck thereby damaging the bridge deck"). In another factually similar case, *LISN, Inc. v. Commercial Union Insurance Cos.*, the Ohio Court of Appeals found that a CGL j(6) exclusion applied where, in the course of removing old cable wires, the insured accidentally cut new cable wires in the process. 615 N.E.2d 650, 653–54 (Ohio Ct. App. 1992) (noting that the j(6) exclusion is a "business risk" exclusion, and the possibility of damaging some wires while removing others was a risk "inherent to performing a particular type of work"). In the case before us, Plaintiff was hired to work with the cans, did in fact work on the cans by removing the cellophane around them and repackaging them, and improperly performed its service when its machine came into direct contact with the cans, nicked the cans, and damaged the cans. In light of *Welfle* and *LISN*, we find unpersuasive Plaintiff's argument that the exclusion cannot apply because it was not hired to "work on" the cans, but only to work on the cellophane around the cans. *See Welfe*, 2007 WL 1174652, at *3 (holding that an insured who misuses a tool to remove something from around an object and thereby damages the

object leads to the conclusion that the insured "worked on" the object itself). In conformity with these persuasive Ohio appellate court decisions, we conclude that the j(6) exclusion applies and precludes Plaintiff's recovery.

Other Sixth Circuit and Ohio decisions cited by Plaintiff are distinguishable. In *Beaverdam Contracting, Inc. v. Erie Insurance Co.*, an insured was hired to clear a parcel of land but mistakenly cleared land belonging to a third party who was not the insured's client. No. 1-08-17, 2008 WL 4378153, at *1 (Ohio Ct. App. Sept. 29, 2008). The court rejected the insurance company's claim that the CGL j(6) exclusion applied, because the claim involved "accidental damage to the property of a third party who was not in any way involved with the contracted work project." *Id.* at *10. The court upheld but distinguished *LISN* and *Welfle*, because, in those cases:

> the contractors were in the process of doing the job they were hired to do, they were working on their customers' property, and the damages were sustained by the customer—not a third party. Essentially, the insured parties incorrectly performed the work they were hired to do for their customers, and the customers sought compensation for damages.

*Id.* at *8. We believe that the present case is more analogous to *LISN* and *Welfle*, because Plaintiff was performing the work that it was hired to do, but performed it improperly. Plaintiff was not performing work on property belonging to a non-client, third party as was the case in *Beaverdam*.

Plaintiff also cites our decision in *Fortney & Weygandt, Inc. v. American Manufacturers Mutual Insurance Co.*, where an insured had laid a defective foundation, resulting in damage to the foundation and underground utility lines as well as the structure later built above. 595 F.3d 308, 309 (6th Cir. 2010). We found that the CGL j(6) exclusion barred the insured's recovery for damage to the foundation, but permitted recovery for damage to the building, because the exclusion "applies

only to the cost of repairing or replacing distinct component parts on which the insured performed defective work." *Id.* at 311 (citing *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 215–17 (5th Cir. 2009)).  Because the work on the structure was performed correctly, coverage was not excluded even though the insured's "incorrect work" on the foundation was the proximate cause of the damage to the building. *Id*. *Fortney*'s holding is in harmony with the Ohio cases, but is factually distinguishable from those cases and the case before us.  As discussed above, Plaintiff's work on the actual cans was defective, so this case falls on the other side of the factual distinction drawn by *Fortney*.

Because we agree that exclusion j(6) applies to Plaintiff's claim, we need not decide the applicability of other exclusions or the issue of coverage, generally.

## CONCLUSION

For the reasons discussed above, we **AFFIRM** the district court order granting summary judgment to Defendant.