**[Cite as *Lang v. Piersol Outdoor Advertising Co.*, 2018-Ohio-2156.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| LARRY D. LANG, et al., | : | Case No. 17CA19 |
| | : | |
| Plaintiffs-Appellees, | : | |
| | : | |
| v. | : | <u>DECISION AND</u> |
| | : | <u>JUDGMENT ENTRY</u> |
| PIERSOL OUTDOOR ADVERTISING | : | |
| COMPANY, | : | |
| | : | |
| Defendant-Appellant. | : | RELEASED 05/30/2018 |

<u>APPEARANCES</u>:

Paul W. Flowers, Paul W. Flowers Co., L.P.A., Cleveland, Ohio, for defendants-appellants
Piersol Outdoor Advertising Company and Dr. Doug Piersol.

H. Brann Altmeyer, Phillips, Gardill, Kaiser & Altmeyer, PLLC, Wheeling, West Virginia, for
plaintiffs-appellees Larry D. Lang and TJDD Property, LLC.

Hoover, P.J.

{¶1}  Piersol Outdoor Advertising Company and Dr. Doug Piersol (collectively referred

to as "Piersol") appeal the Washington County Common Pleas Court's decision to grant Larry

Lang and TJDD Property, LLC (collectively referred to as "Lang") summary judgment in Lang's

declaratory judgment action. In this case, Lang sought clarification of Piersol's rights under "a

right of first refusal" provision set forth in a lease agreement concerning the rental of real estate

for the erection of a billboard that had been entered between Piersol and Lang's predecessor in

interest. In particular, Lang denied the provision was enforceable, or alternatively he claimed that

the contractual provision did not give Piersol the right to engage in "on-premises"[1] advertising

on the commercial property owned by Lang; but rather, only allowed Piersol the right to acquire

any outdoor signs on the property used for "off-premises" billboard style advertising. After

competing cross-motions for summary judgment were filed and briefed by Lang and Piersol, the

trial court determined that the right of first refusal language was intended to apply to off-

premises billboard style advertising only. The trial court also determined that Piersol was

precluded from enforcing the right of first refusal under the doctrine of laches. Thus, the trial

court granted Lang's motion. On appeal, Piersol contends that the trial court erroneously

interpreted the contract provision, that the trial court erred in granting summary judgment in

favor of Lang, and that he should be awarded summary judgment. Piersol also contends that the

trial court erred by relying upon the doctrine of laches. For the reasons discussed more fully

below, after independent interpretation of the contract at issue we conclude that Lang is entitled

to judgment as a matter of law. We also conclude that Piersol's remaining assignment of error

concerning the doctrine of laches is rendered moot. Accordingly, we affirm the trial court's

judgment.

### I. Facts and Procedural History

{¶2}    Dr. Doug Piersol is a retired chiropractor that now owns and manages Piersol

Outdoor Advertising Company.

{¶3}    On October 7, 1989, Piersol entered into an Agreement of Lease with Joseph

Cernus ("Cernus"). As the "lessee," Piersol acquired the right to a 20-foot by 40-foot parcel of

land near U.S. Route 7, upon which he intended to erect a billboard. The term was for three

---

[1] Piersol defines "on-premises" advertising as advertising in which an entity "constructs, manages, and maintains signs for other proprietors on or near the property they are occupying." This differs from "off-premises" advertising, which according to Piersol, "typically consists of billboards and other signs situated some distance away from the business." Appellant's Brief at p. 3, citing Ohio Adm. Code 5501:2-2-01(U) & (W); *See also* OP 38, Affidavit of Charles D. Piersol.

years, which Piersol had the option of renewing on a yearly basis. In addition to an initial non-refundable deposit of $600.00, he agreed to pay $2,400.00 annually, half of which was due six months in advance.

{¶4}    The parties also agreed to a "right of first refusal", which stated:

Lessee has first refusal on all property owned by lessor for additional use as outdoor advertising. Any new leases on such property will not exceed ten percent (10%) of the lessee's current lease amount.

{¶5}    A few years later when the original term was about to expire, Piersol and Cernus decided to adjust their arrangement. A revised Agreement of Lease was executed on September 30, 1992 that superseded the 1989 lease. The leased property remained the same, and was described as: "Being certain parcel of land, as specified in lease of October 7, 1989." The description further provided that: "This lease voids prior lease of 10/7/89 except the addendum of 10/7/89 and additions of 3/31/90 attached." Thus, the right of first refusal, which had been included in the addendum of October 7, 1989, remained intact. The lease term was extended six years commencing October 1, 1992, at a rate of $2,800 annually, with half payable every six months, and subject to a 5% increase every three years. Both the 1989 and the 1992 leases were recorded, along with their attachments, in Washington County on January 11, 1995.

{¶6}    Through the years, Piersol made payments due under the lease; and Piersol has operated a single, multi-faced billboard on the leased premises. Cernus eventually passed away, and his daughter was appointed as the Executrix of his Estate.

{¶7}    Lang is a real estate developer and entrepreneur who is also involved in other business ventures, including several in the oil and gas industry. In 2009 he entered a land contract with Cernus's Estate to acquire the real estate along U.S. Route 7 at issue in this case.

Lang later developed the First Colony Center on the property, which includes several hotels, restaurants, and stores. Lang has spent approximately $5,500,000.00 in purchasing and developing the property.

{¶8}    While Lang never completed a title search prior to purchasing the property, he was aware that Piersol "had a contract * * * for billboards on site" at the time of his purchase of the premises. And, Lang collected rent payments from Piersol for the next several years. In addition, Piersol mailed copies of the leases to Lang in 2010. Nevertheless, Lang insists that he was not aware of Piersol's alleged first refusal rights that were set forth in the addendum until 2015.

{¶9}    In 2015 the Wings Restaurant chain entered negotiations with Lang to purchase one of the lots in the First Colony Center. Wings retained a local law firm to handle the transaction, and a title search was conducted during the due diligence period. The title search revealed the recorded leases, and Lang was informed of the right of first refusal. Wings's counsel informed Lang that Piersol "was saying he had a right to all of the signage on the property", including on-premises signage. While Lang still completed the purchase with Wings for approximately $500,000.00, he had to furnish an indemnity agreement to cover Piersol's claim. Lang has since entered similar arrangements with other buyers of lots on the commercial property.

{¶10}   On February 27, 2015, Lang commenced this declaratory judgment action, seeking clarification of Piersol's rights under the right of first refusal provision set forth in the lease agreement. After completing discovery, and attempting mediation, the parties filed competing motions for summary judgment. On April 13, 2017, the trial court issued a Decision granting summary judgment in favor of Lang, and denying the motion that had been submitted

by Piersol. Specifically, the trial court determined that the 1992 lease and addendum dated October 7, 1989, was "a valid binding lease." However, it further determined that it did not believe that the intention of the parties was to give Piersol control over all manner of outdoor advertising. Rather, it found as follows:

> * * * Defendant leased from Mr. Cernus for the purpose of erecting billboards as an investment. The terms dealt with location, access to the sign into the future and even, if necessary, relocation to accommodate Mr. Cernus' sale of the real estate. As any prudent businessman, Defendant protected his investment with the right of refusal language to keep Mr. Cernus from leasing additional billboard space to others every few yards. To expand the agreement beyond that interpretation would require language with reasonable certainty or evidence from the parties which, unfortunately, is not possible with the death of Mr. Cernus.
>
> ***
>
> Plaintiff has further asserted that signage erected on or in close proximity to the advertiser's business premises such as the signage at issue in this case is not considered "outdoor advertising" within the Outdoor Advertising Industry and provided support therefore that persuades the Court that Defendant's rights or interests do not apply to the signage on or in near proximity to businesses developed on the property to date or into the future, but are limited to assertion should Plaintiff or a successor or assign consider the lease or erection of additional billboard signage.

The trial court also determined that "[Lang] accurately asserted the doctrine of laches, its elements, and the facts of this case supported by evidence sufficient to persuade this Court that [Piersol's] position that he should control and be compensated for signage associated with the developed and developing real property are barred."

{¶11}  The Decision was journalized by judgment entry shortly thereafter. Piersol filed a timely notice of appeal.

## II. Assignments of Error

{¶12}  Piersol assigns the following errors for our review:

First Assignment of Error:

> THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY ADOPTING A CONSTRUCTION OF THE PERTINENT LEASE AGREEMENT ADDENDUM THAT IS CONTRARY TO THE PLAIN AND ORDINARY MEANING OF THE TERMS USED.

Second Assignment of Error:

> THE TRIAL COURT COMMITTED A FURTHER ERROR OF LAW BY GRANTING SUMMARY JUDGMENT UPON THE DOCTRINE OF *LACHES*.

## III. Law and Analysis

{¶13}  In his first assignment of error, Piersol argues that the trial court erred by granting summary judgment in favor of Lang and by denying his motion for summary judgment. Specifically, Piersol contends that the trial court erred in its interpretation of the right of first refusal language set forth in the addendum to the lease agreement, and that the plain and ordinary meaning of the terms employed entitle Piersol to lease and manage all of the on-premises and off-premises outdoor advertising across the property.

**A. Summary Judgment Standard of Review and Rules of Contract Construction**

{¶14} We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long-Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

{¶15} Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-

3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8, 1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Dresher* at 293; Civ.R. 56(E).

{¶16} We further note "leases are contracts and are subject to the traditional rules of contract interpretation." *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust*, 156 Ohio App.3d 65, 2004-Ohio-411, 804 N.E.2d 979, ¶ 29 (4th Dist.). Appellate courts apply a de novo standard of review to an appeal from a summary judgment based on the interpretation of a contract. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E2d 931, ¶ 12; *see also Willis v. Gall*, 2015-Ohio-1696, 31 N.E.3d 678, ¶ 10 (4th Dist.) ("The interpretation of a written contract * * * is a matter of law that we review de novo.").

{¶17} "In construing a written instrument, the primary and paramount objective is to ascertain the intent of the parties so as to give effect to that intent." *Shafer v. Newman Ins. Agency*, 4th Dist. Highland No. 12CA11, 2013-Ohio-885, ¶ 10, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). "When the terms of a contract are unambiguous, courts will not, in effect, create a new contract by finding an intent not expressed in the clear language employed by the parties." *Waina v. Abdallah*, 8th Dist. Cuyahoga No. 86629, 2006-Ohio-2090, ¶ 31, citing *Shifrin v. Forest City Ents.*, 64 Ohio St.3d 635, 597 N.E.2d 499 (1992). "Courts must give common words their ordinary meaning unless manifest absurdity would result or some other meaning is clearly evidenced from the face or overall contents of the written instrument." *Shafer* at ¶ 10, citing *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 29.

{¶18} " 'If a contract is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations; instead, the court

must give effect to the agreement's express terms.' " *Id*., quoting *Uebelacker v. Cincom Sys., Inc.*, 48 Ohio App.3d 268, 271, 549 N.E.2d 1210 (1st Dist.1988). "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 16. "Extrinsic evidence is admissible to ascertain the intent of the parties only when the contract is unclear or ambiguous, or where surrounding circumstances give plain language special meaning." *Highland Drilling, Inc. v. McAlester Fuel Co.*, 4th Dist. Washington No. 99CA08, 1999 WL 1058785, *3 (Nov. 16, 1999).

**B. Deposition Testimony**

{¶19}   As an initial matter, we are constrained to reviewing the Civ.R. 56(C) materials filed below. Lang argues that while Piersol cites the deposition testimony of both Larry Lang and Dr. Doug Piersol, the transcripts were never filed or otherwise presented to the trial court and thus are not a part of the record and cannot be considered by us on appeal. [Lang App. Brief at p. 5.]

{¶20}   Lang's argument is misplaced. While a notice of filing of the deposition transcripts is not present in the record on appeal, copies of both deposition transcripts were forwarded on appeal. The copies of the deposition transcripts were forwarded as attachments to Piersol's Reply memorandum filed on February 13, 2017. Because the deposition transcripts were available to the trial court when it made its rulings concerning the competing motions for summary judgment, and are part of the record on appeal, we also may consider the deposition evidence.

**C. Interpretation of Right of First Refusal Language**

{¶21}  The heart of the parties' dispute lies in the wording of the lease addendum's "right of first refusal" language. The paragraph states that: "Lessee [Piersol] has first refusal on all property owned by lessor [Lang] *for additional use as outdoor advertising*. Any new leases on such property will not exceed ten percent (10%) of the lessee's current lease amount." (Emphasis added.) Piersol argues that this paragraph gives him the first option to control *all* forms of outdoor advertising on the First Colony Center property; including both off-premises billboard style advertising, and on-premises advertising that relates to the businesses established in the development. Conversely, Lang interprets the provision to cover only off-premises advertising. Thus, Lang asserts that the agreement does not give Piersol the first option to control the advertising and outdoor signage of the other businesses located within the development.

{¶22}  The trial court construed the contested provision to exclude first refusal rights for on-premises outdoor advertising. In other words, the trial court interpreted the right of first refusal language to apply only to off-premises, billboard style advertising. In reaching this conclusion, the trial court relied upon extrinsic evidence and noted that the parties' behavior over a period of twenty-five years was instructive on the issue. It also apparently relied upon expert testimony provided by Lang with his summary judgment filings. Piersol argues that the trial court's reliance upon extrinsic evidence was improper, and that the plain and ordinary meaning of the terms used in the contested provision entitle him to a right of first refusal of all outdoor advertising activities on the property. We agree with Piersol that the addendum language is clear and unambiguous, and to the extent that the trial court relied upon extrinsic evidence in ruling on the competing motions for summary judgment it erred. Nevertheless, we ultimately reach the same interpretation of the trial court; that is based upon the unambiguous language of the

provision and overall lease agreement, the parties intended that Piersol have first refusal rights only to off-premises billboard style advertising conducted on the commercial property.

{¶23} If we were to adopt Piersol's interpretation of the right of first refusal language, we would be taking the contested language out of context. "In interpreting contract language, the intent of the parties will be derived from considering the whole agreement, and not from detached or isolated parts of it." *Highland Drilling*, *supra*, at *5, citing *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 172, 436 N.E.2d 1347 (1982). A review of the agreement as a whole reveals that the parties contemplated only off-premises advertising when drafting the agreement. For instance, the original 1989 lease notes that the purpose of the lease was for the "erection of (4) signs on (1) pole, to be leased to other companies." Furthermore the addendum attached to the 1989 lease and the 1992 lease, the same addendum that includes the right of first refusal language, states that the "[s]pace leased * * * is for lessee to erect, paint, and maintain an outdoor advertising structure with multifaced signs." Finally, the 1990 additions include the handwritten note that the "purpose of lease property" is for "erection, maintenance & upkeep for (4) lighted billboards on (1) pole." It is clear that when read in its entirety, the parties only contemplated off-premises, billboard style advertising when drafting the agreement. The agreement does not include any references to the on-premise style of advertising that Piersol now argues he has a first refusal right.

{¶24} Furthermore, the right of first refusal language provides that Piersol "has first refusal on all property owned by lessor [Lang] *for additional use as outdoor advertising*." [Emphasis added.] "Advertising" means "the business of preparing advertisements" and "outdoor" means "performed outdoors". *See* The Merriam- Webster Dictionary (Home and Office Ed.1998), 9, 371. Thus, under the plain and ordinary meaning of the terms employed,

Piersol has first refusal rights for property in the First Colony Center that is to be used for the business of preparing outdoor advertisements. The language does not contemplate Piersol having first refusal rights for property used primarily for the sale of goods or services, in which on-premises advertising is only an ancillary activity. Thus, we conclude that the right of first refusal language merely provides Piersol with the first option to lease and operate additional space on the property to be used for off-premises, billboard style advertising.

{¶25}  For these reasons, we hereby overrule Piersol's first assignment of error.

**D. Piersol's Second Assignment of Error is Moot**

{¶26}  Our resolution of Piersol's first assignment of error is dispositive, and renders moot his second assignment of error. Hence, we need not address the second assignment of error. *See* App.R. 12(A)(1)(c).

### IV. Conclusion

{¶27}  In short, we believe that Piersol's interpretation of the first refusal language is not supported by the instrument's language. The parties' agreement provides Piersol with first refusal rights for use of the property in off-premise, billboard style advertising only; it does not contemplate the more novel concept of on-premises advertising. We find no ambiguity, and therefore need not consider extrinsic evidence.

{¶28}  Based on the foregoing, we conclude that the trial court did not err in granting Lang's motion for summary judgment; or in denying Piersol's cross-motion for summary judgment. Having overruled Piersol's first assignment of error and rendering moot his remaining assignment of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and McFarland, J.: Concur in Judgment and Opinion.


For the Court


By:  _____
        Marie Hoover, Presiding Judge



### NOTICE TO COUNSEL


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**